UTICA,
Aug. 1826.

The People
v.
Bank of Niag-
ara.

THE PEOPLE OF THE STATE OF NEW-YORK *against* THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF NIAGARA.

Forms: Of information in nature of a *quo warranto* against an incorporated bank, for exercising banking privileges without warrant ;

Of plea, setting forth its act of incorporation, and organization under it ;

Of three several replications; 1. That on, &c. the debts due by the bank, over and above the amount of their specie deposits, exceeded three times the sum of the capital stock subscribed and paid in ;

ON information in nature of a *quo warranto.* The pleadings were as follows :

*Albany county,* ss : *Samuel A. Talcott,* attorney general of the people of the state of *New-York,* who sues for the said people in this behalf, comes here before the justices of the people of the state of *New-York,* of the supreme court of judicature, of the same people, on the 8*th* day of *March,* 1825, in this same term of *February ;* and for the said people, gives the said court here to understand and be informed, that *The President, Directors and Company of the Bank of Niagara,* at *Buffalo,* to wit, at *Albany,* in the county of *Albany,* for the space of six months now last past, and upwards, have used, and still do use, without any warrant, grant or charter, the following liberties, privileges and franchises, to wit : that of being a body politic and corporate in law, fact and name, by the name of *The President, Directors and Company of the Bank of Niagara,* and by the same name to plead and be impleaded, answer and be answered unto ; and also the

*rejoinder and issue thereon : 2.* That they refused to redeem, &c. in specie, &c. ; and yet did not wholly discontinue their banking operations ; *rejoinder and issue thereon : 3.* That they became insolvent, by the fraud, neglect, or mismanagement of them, or of some or all of their officers or agents ; stopped payment, and discontinued and closed their banking operations, for several years. *Rejoinder* to the last replication, admitting its truth, but saying that the bank, on, &c. resumed payment, and continued it ever since that time. Demurrer and joinder.

*Held,* that the rejoinder was sufficient.

Under the act incorporating the bank of *Niagara,* (sess. 39, *ch.* 167,) the bank did not forfeit its charter by insolvency and closing their banking operations, if, before they were prosecuted by the people, they resumed the payment of their debts.

Otherwise, if the prosecution had been commenced before they resumed payment.

The statute,(*sess.* 48, *ch.* 325, *s.* 6,) passed *April* 21, 1825, limited such insolvency to one year. If it exceed that term, the bank forfeits its charter. But this act does not extend to cases of forfeiture happening before it passed.

An information in nature of a *quo warranto* against a corporation, for a forfeiture of its franchises, may be filed against it by its coporate name ; may charge it generally with usurpation ; and on the defendants' setting forth the act of incorporation, and justifying under it, the attorney general may reply the causes of forfeiture specially.

Such a replication is not a departure.

following liberties, privileges and franchises, to wit, that of being, or becoming proprietors of a bank or fund for the purpose of issuing notes, receiving deposits, making discounts, and transacting other business which incorporated banks may lawfully transact by virtue of their respective acts of incorporation ; and also, that of actually issuing notes, receiving deposits, making discounts, and carrying on banking operations, and other monied transactions, which are usually performed by incorporated banks, and which they alone have a right to do ; all which said liberties, privileges and franchises the *President, &c.* aforesaid, during all the time aforesaid, have usurped, and still do usurp upon the said people, to their great damage and prejudice ; whereupon, the said attorney general prays the advice of the said court in the premises, and due process of law against the *President, Directors and Company of the Bank of Niagara*, aforesaid, in this behalf, to be made, to answer to the said people, by what warrant they claim to have, use and enjoy the liberties, privileges and franchises aforesaid.

And now at this day, &c. (*imparlance to August term*, 1825, *and appearance of the defendants, by T. Van Vechten & E. Baldwin, their attorneys.*)

And the said *President, Directors and Company of the Bank of Niagara*, having heard the said information read, complain, that, under color of the premises in the said information contained, they are greatly vexed and disquieted ; and this by no means justly ; because, protesting that the said information and the matters therein contained, are insufficient in law, and that they need not, nor are they obliged, by the law of the land, to answer thereto : yet, for plea in this behalf, the said *President, &c.* say, that by a certain act of the legislature of the people of this state, passed on the 17*th* day of *April, A. D.* 1816, entitled " An act to incorporate the bank of *Niagara*," they the said *President, &c.* were ordained, constituted and declared to be, from time to time, and until the 1*st* day of *January, A. D.* 1832, a body corporate and politic, in fact

*Margin notes:* UTICA, Aug. 1826. The People v. Bank of Niagara. Plea.

and in name, by the name of *The President, Directors and Company of the Bank of Niagara ;* and by that name, it is enacted and declared, in and by the said act, that they, the said *President, &c.* and their successors, until the said 1*st* day of *January, A. D.* 1832, may, and shall have succession ;—and shall be, in law, persons capable of suing and being sued, pleading and being impleaded, answering and being answered unto, defending and being defended, in all courts and places whatsoever, and in all manner of actions, suits, complaints, matters and causes whatsoever ; as by the said act of the legislature of the people of the state of *New-York,* reference being thereunto had, will, among other things, more fully and at large appear.    And the said *President, &c.* further say, that by the force of the said act of the legislature, and of the provisions thereof, they were created and constituted, and still continue to be, and are a body politic and corporate in fact and in name, and are entitled to do all lawful acts, and to have, use and enjoy all the rights, liberties, privileges, franchises and immunities granted to them, and conferred upon them, by the said act, and by the law of the land : by virtue whereof, they, the said *President, &c.* for all the time in the said information in that behalf mentioned, have used and exercised, and still do use and exercise, the liberties, privileges, and franchises of a body politic and corporate, in law, fact and name, by the name of *The President, Directors and Company of the Bank of Niagara ;* and, by the same name, suing and being sued, pleading and being impleaded, defending and being defended, answering and being answered unto, in all courts and places whatsoever, and also the liberties, privileges and franchises of being and becoming proprietors of a bank or fund, for the purpose of issuing notes, receiving deposits, making discounts, and transacting other business which incorporated banks may lawfully transact, by virtue of their respective acts of incorporation ; and of actually issuing notes, receiving deposits, making discounts and carrying on banking operations, and other monied transactions which are usually performed by incorporated

banks. And the said *President, &c.* have claimed, used and enjoyed, and yet do claim to have, use and enjoy, all the liberties, privileges and franchises, allowed to, and conferred on them, in and by the aforesaid act of the said legislature, as it was and is lawful for them to do. Without this, that the said *President, &c.* during all, or any part of the time mentioned in said information, have usurped or do still usurp the said liberties, privileges and franchises, mentioned in the said information, or any of them, upon the said people of the state of *New-York,* in manner and form, as by the said information is above supposed ; all which several matters and things, they, the said *President, &c.* are ready to verify, &c. Whereupon, they pray judgment, and that the aforesaid liberties, privileges and franchises, by them claimed in manner aforesaid, may be allowed and adjudged to them, the said *President, Directors and Company of the Bank of Niagara ;* and that they may be dismissed and discharged by the court here, of and from the premises above charged upon them, &c.

And the said *Samuel A. Talcott,* attorney general, having heard the said plea of the said *President, &c.* for the said people, &c. saith, that the said people ought not to be barred from having their aforesaid information against the said *President, &c.* because, he says, that the said *President, &c.* after their incorporation, did wilfully, or negligently, so transact and manage the affairs of the said corporation, that, afterwards, to wit, on the 1*st* day of *January,* 1818, the total amount of debts due by the said corporation, over and above the specie, then actually deposited in the bank, did exceed three times the sum of the capital stock, subscribed and actually paid into said bank ; and this, &c.

And the said attorney general further saith, that the said people ought not to be barred, &c. ; because, he says, that after the passing of the act of incorporation, in the plea of the said *President, &c.* mentioned, to wit, on the said 1*st* day of *July,* 1819, they, the said *President, &c.* did refuse, on demand being made at their banking house,

1st replication.

2d replication.

UTICA,
Aug. 1826.

The People
v.
Bank of Niag-
ara.

during the regular hours of doing business, to redeem in specie, or other lawful money of the *United States,* the bills, notes and evidences of debt issued by the said *President, &c.;* and the said *President, &c.* did not thereupon wholly discontinue and close their banking operations, by way of discount and otherwise, until such time as the said *President, &c.* did resume the redemption of their bills, notes, and other evidences of debt; but on the contrary thereof, after such refusal to redeem their said bills, notes and other evidences of debt, and before they resumed the redemption thereof, to wit, on the 2*d* day of *July,* in the year aforesaid, and at divers other days and times, the said *President, &c.* did receive deposits, discount notes, and issue promissory notes of the said *President, &c.;* and this, &c.

3d replication.

And the said attorney general further saith, that the said people ought not &c.; because, he says, that after the passing of the said act of incorporation, in the said plea mentioned, and after the said *President, &c.* had entered upon the business of banking, to wit, on the 2*d* day of *July,* 1819, large amounts of the bills, notes and evidences of debt of the said *President, &c.* had been put into circulation by the said *President, &c.* and then were in circulation; and that while the said bills, notes and evidences of debt were in circulation, to wit, on the day and year last aforesaid, the said *President, &c.* by the fraud, neglect or mismanagement of them, or of some or all of their officers or agents, became wholly insolvent, and unable to redeem the said bills, notes and evidences of debt, so in circulation, in specie or other lawful money of the *United States;* whereupon, the said *President, &c.* to wit, on the day last aforesaid, discontinued, ceased and closed their banking operations, and from that time afterwards, to wit, until the 1*st* day of *October,* 1824, neglected to resume their banking operations, either by way of discount or otherwise; and this, &c.

Rejoinder to
the 1st repli-
cation.

And the said defendants, as to the said plea of the said *Samuel A. Talcott,* attorney general, first above pleaded, &c. in reply to the aforesaid plea of them, the said de-

fendants, protesting that the same replication, and the matters therein contained, are not sufficient in law, to convict them, the said defendants, of the premises in the said information above charged upon them, nor to remove them from the liberties, privileges and franchises aforesaid, and that they need not, nor are they bound by the law of the land, to answer thereto ; yet, for a rejoinder in this behalf, the said defendants say, that they, the said *President, &c.* did not, after their incorporation, wilfully or negligently so transact and manage the affairs of the said corporation, that on the 1*st* day of *January*, 1818, or at any time before or after the said day, the total amount of debts due by the said corporation, over and above the specie then actually deposited in the bank, did exceed three times the sum of the capital stock subscribed and actually paid into said bank, in manner and form as the said attorney general hath, for the people, &c. above in his said replication, in that behalf alleged ; and of this, they, the said defendants, put themselves upon the country, &c.

And the said defendants, as to the said plea, &c. secondly above pleaded, &c. in reply, &c. say, that the said people, &c. ought not, &c. because they say, that though true it is, that after the passing of the act of incorporation, in the plea of them, the said defendants, mentioned, to wit, on the day in the said replication mentioned, they, the said defendants, did refuse, on demand being made at their banking house, during the regular hours of doing business, to redeem in specie, or other lawful money of the *United States,* the bills, notes and evidences of debt issued by them, the said defendants, as in the said replication is alleged ; yet the said defendants in fact say, that they did themselves wholly discontinue and close their banking operations, by way of discount and otherwise, until such time as they, the said defendants, did resume the redemption of their bills, notes and other evidences of debt, without this, that after such refusal to redeem their said bills, notes and other evidences of debt, and before they resumed the redemption thereof, at the time mentioned in said replication in that behalf, or at other days or times, they,

Rejoinder to the 2d replication.

UTICA,
Aug. 1826.

The People
v.
Bank of Niag-
ara.

Rejoinder to
the 3d replica-
tion.

the said defendants, received deposits, discounted notes, and issued promissory notes of them the said *President, &c.* and of this, they the said defendants put themselves upon the country, &c.

And the said defendants, as to the said plea, &c. thirdly above pleaded, &c. in reply, &c. (*protesting that it is insufficient in law, &c. and that they did not become insolvent as therein alleged ;*) yet for a rejoinder, &c. the said defendants say, that though true it is, that after the passing of the said act of incorporation, in the said plea mentioned, and after they, the said defendants, had entered upon the business of banking, to wit, on the day mentioned in the said replication in that behalf, large amounts of the bills, notes and evidences of debt, of them, the said defendants, had been put into circulation by them, the said defendants, and then were in circulation, and that while the said bills, notes and evidences of debt were in circulation, to wit, on the day and year mentioned in the said replication in that behalf, they, the said defendants, became unable to redeem the said bills, notes and evidences of debt, so in circulation, in specie, or other lawful money of the *United States ;* and that, thereupon, the said defendants, on the day in the said replication in that behalf mentioned, discontinued, ceased and closed their banking operations ; and from that time, for a long time afterwards, to wit, until the day and year, in the said replication in that behalf mentioned, neglected to resume their banking operations, either by way of discount or otherwise, as in the said replication is alleged ; yet the said defendants, in fact, say, that in and by the act of the legislature of the people of this state, in the plea of the defendants above mentioned, wherein and whereby they, the said defendants, were ordained, constituted and declared to be a body corporate and politic, in fact and in name, in the manner set forth in said plea, it was, among other things, enacted, that if, at any time after the passing of said act, the said *President, Directors and Company,* should refuse, on demand being made at their banking house, during the regular hours of doing business, to redeem in specie, or other lawful money of the *United*

*States*, their said bills, notes, or other evidences of debt issued by the said company, the said *President, Directors and Company* should, on pain of forfeiture of their charter, wholly discontinue and close their said banking operations, either by way of discount or otherwise, until such time as the said *President, Directors and Company* should resume the redemption of their bills, notes, or other evidences of debt, in specie or other lawful money of the *United States*, as by the said act of the legislature of the people of the state of *New-York*, reference being thereunto had, will, among other things, more fully and at large appear.

And the defendants aver, that at the time of their refusal to redeem in specie, or other lawful money of the *United States*, their said bills, notes and other evidences of debt, as herein before stated, and until the *28th* day of *May, A. D.* 1825, they wholly discontinued and closed their said banking operations ; and that on the said *28th* day of *May*, &c. they resumed the redemption of their bills, notes or other evidences of debt, in specie or other lawful money of the *United States ;* and have, ever since that time, and still do continue to redeem the same, in manner aforesaid ; and this, they, the said defendants, are ready to verify, &c. wherefore, &c. (*as in the plea.*)

Issue to the country on the 1st and 2d rejoinders ; and general demurrer to the 3d and last. The defendants joined in demurrer.

*Talcott*, (attorney general) in support of the demurrer, made the following points : 1. The infomation is correctly brought against the defendants, by their corporate style, for the purpose of obtaining judgment of ouster, or of seisin of their franchise of being a corporation, for neglect or misuser. 2. *Non constat*, upon the information, that those who have assumed to act as such corporation under the name mentioned, ever were a corporation. 3. The information is good at all events, for the undue exercise of the other franchises enumerated, even if it should be deemed objectionable to bring it against the corporation by its cor-

UTICA,
Aug. 1826.

The People
v.
Bank of Niagara.

Demurrer to the 3d and last.

UTICA,
Aug. 1826.

The People
v.
Bank of Niag-
ara.

porate name, for usurping the franchise of being a corpo-
ration.    And since there have been pleadings over, and a
demurrer, if the information is, on the face of it, good for
any part, it cannot now be objected to.    It is like the case
of a general demurrer to a whole declaration consisting of
several counts, one count being good.  4. The replication
sets forth sufficient causes of forfeiture ; and by pleading
over, if there are any defects in the replication, they are
cured.  5. The rejoinder, as far as embraced by the demur-
rer, admits enough to forfeit the charter.

*A. Van Vechten,* contra, stated these points : 1. The
information against the defendants as a corporation, is bad ;
because it does not state any cause of forfeiture. 2. This
defect cannot be supplied by the replication; but if it can,
then, 3. the replication is bad for uncertainty.

He said, so far as the information seeks a forfeiture, and
a fine for the usurpation, this proceeding is in the nature
of a criminal prosecution.    The plea is a direct answer.
It sets forth the statute, and that the defendants organized
a bank under it, which are admitted by the replication.
This destroys the gravamen of the information.    If so,
what becomes of the charge that the defendants exercis-
ed banking operations, without warrant or authority ?
Has the attorney general a right to say, in his replication,
for the first time, " though you had such warrant, you
have forfeited it ?" A forfeiture is not to be presumed ;
and it must be made a substantive ground of attack in the
information.    It must be expressly charged in the first in-
stance.    The defendants are not bound to set out their ti-
tle, and negative a forfeiture, which has not been charged
upon them.    The information alleges a usurpation only.
It is good for so much, and no more.    This being met, the
whole is answered.    If it was intended to go for the for-
feiture, the precise ground should have been stated, with
time, place and circumstance.  (*Commonwealth* v. *The
Un. F. Ins. Co. in Newburyport*, 5 *Mass. Rep.* 230.)
This case shews a plain distinction in the proceedings and
judgment, between the two cases of usurpation and for-

feiture. In the former, there is a judgment of ouster, in the latter, of seizure. If there be a difference in the judgment, with what propriety can it be pretended there should be no distinction in the information? It is said that all may come out in the course of the pleadings. But suppose the defendants do not choose that this should be so: suppose they insist on having the true cause spread upon the information: have they not a right to do so? In *England*, the charters of incorporation are deemed mere private grants; and the attorney general is not presumed to know either of the grant or its extent. Not so of the corporation in question. It is created by a public act. Let the attorney general, then, state precisely the nature of the act which has produced a forfeiture. There being no such act stated, is the replication consistent with the information? No. It is a departure. The information admits the corporate existence of the defendants. The replication insists on a forfeiture. This order makes the latter the expositor of the charge, instead of the information. If it be insisted that the act of 1825, (*sess*. 48, *ch.* 325, *s.* 7,) gives a *scire facias*, or *quo warranto*, in this case; the answer is, it has not prescribed the form. This must be according to the common law. Did not the legislature mean that the attorney general should proceed for the forfeiture itself? And could it have intended that he may do this without saying so in the information? Suppose a default for want of a plea: could the attorney general have taken such a judgment upon this information as the statute directs? No. He could only have judgment of ouster for the usurpation.

As to the effect of pleading over, we deny usurpation; and then the attorney general comes and shows a case of forfeiture, to which we rejoin. We say this is a departure; which, it will not be denied, is matter of substance, and bad on general demurrer. And it follows, that it is bad after pleading over.

The replication is defective in itself, independent of the departure. It relies upon the fraud, &c. of the defend-

UTICA,
Aug. 1826.

The People
v.
Bank of Niag-
ara.

ants, or their officers. Admit the fraud of the officers: the defendants do not admit their own fraud. The fraud, or other acts charged upon the officers, will not work a forfeiture. What these acts are, does not appear. No single act is pointed out. Still, the defendants may show it was not their own fraud.

There is a total want of certainty and precision. It is not stated whether there was fraud, or mismanagement, or neglect. The allegation is in the alternative. We certainly admit, by pleading over, no more than is alleged: It is not said whether the fraud was wilful and actual, or merely constructive. Which of these alternative particulars may be a ground of forfeiture, it is not said. It may be this, that or the other. It is also defective in not specifying the particular acts of violation or omission. To say fraud or mismanagement, is not enough. The cause of forfeiture does not consist in the sound, but in the act.

But the replication is answered by the rejoinder. The ground of forfeiture is the defendants continuing their operations after they ceased to redeem their bills, and before they resumed specie payments. In such a case, the act declares the forfeiture of the charter to be the consequence. This provision is, in substance, an express authority to resume their banking operations whenever they resume their payments. The object was, to prevent further issues of paper while they were unable to redeem it; and it is always a good answer, that they have followed the directions of the act. If there be a limit to the time during which they may forbear business and forbear payment, who is to judge of it? There is a period beyond which the charter cannot endure. But till that time arrive, the legislature have not only sanctioned, but they have enjoined a cessation of all banking operations under given circumstances. The general act of 1825, before cited, (*section* 6,) has limited the period to one year. If the court may judge of the time, where was the necessity of this legislative interference?

At any rate, the legislature may do an act which amounts to a waiver of any forfeiture of this kind already incurred.

And have they not done so by passing a statute which declares there shall be a forfeiture by certain acts, after its passage? They recognize all corporations as operative, and as not forfeited by any acts of omission or nonuser as to which there was no limitation of time before the act passed.

Indeed, is not the acquiescence of the state for this length of time without any prosecution, in itself, a sanction to the bank, in the resumption of their banking business?

*Talcott*, in reply. The replication does not depart from the information. The latter is not inconsistent with the former. True, we admit the corporation to have existed; that it once had the privilege of banking. Neither the information nor replication deny this. But in the replication we follow out the subject, and allege a forfeiture. Having forfeited them, their exercise is the usurpation of which the information complains. Thus the case goes on according to the course of pleading in *quo warranto*. The information asks, by what authority do you exercise these privileges? They say we should ask in a different form; why do you *continue* to exercise them? Where is the material difference? The judgment follows the nature of the case as it appears upon the pleadings, whether there be a default or verdict. A default upon the information would have admitted the usurpation; though not perhaps the reason and nature of it, so particularly as after it was explained by the replication. The statute of 1825 (section 7) is positive that the *corporation* shall be prosecuted by *sci. fa.* or information, &c. and that too in cases of forfeiture. This information follows the express provisions of the act. We cannot sue a corporation, unless by its corporate name. An action against the individuals would not be an action against the corporation. The objection that there is a departure, would apply to every proceeding by information in *England*. There is no difference in the mode of setting forth a usurpation, by pleading, whether it arise from the provisions of a private charter, or a public act of the legislature. In every case where

the information was general, and the defendant justified, (and it is so in every English case,) the courts must have sustained the proceeding on grounds which are applicable here.

The authorities, however, are abundant, that the defects of the information, if there be any, are cured by the defendants' pleading over. (8 *John.* 110. *Cro. Car.* 288. *Frith's case, Cro. Eliz.* 68. 12 *Mod.* 459, 466, *per Holt, Ch. J.*)

True, the replication is in general terms ; but it may be added, that the rejoinder admits all that is stated by it : thus presenting the question, whether a disability to pay arising from the fraud, mismanagement, or neglect of the corporation, or its agents, is a ground of forfeiture. It admits a case which never could arise from honest inability.

It is said the acts charged, may not be those of the whole company. I will not stop to inquire what the act of the company is, if it be not the act of their agent ; nor whether the company would be liable, as such, on a note made by their agent. If the act of the agent is not to be considered cause of forfeiture, it is difficult to see how the charter can be forfeited, either by nonuser or misuser ; cases provided for, both by common law, and by the statute of 1825. Where is the case in which the fraud, mismanagement, or neglect has been the act of all the individuals of a banking company ? If this be necessary, when shall we find a case in which the charter can be forfeited ? Wherever an agent acts within his powers, his is the act of the company ; and may be treated as such to all intents and purposes ; and this, whether it be in carrying on their business, or entirely desisting.

The company contend for allowing them time to lie by, in a dormant state. This, it is said, they have a right to, under the 10th section of the act of incorporation. (*Vid. sess.* 39, *ch.* 167, *s.* 10, 13.) But the 13th section contains the only provision for nonuser with impunity ; and this restrains the right to the 1st of *January*, 1817. But what does the 10th section grant ? That the defendants may lie still as long as they please ? No such thing.

But if they do stop payment, they shall not issue paper before resuming payment, upon pain of forfeiture. The legislature say, " remain dormant as long as you dare, without resuming payments ; and we leave the general law to take hold of you." That law declares nonuser to be a cause of forfeiture. The legislature add another cause to the list of misuser. Does it follow that they intend to sanction a misuser to an unlimited extent?

The rejoinder denies insolvency ; but admits a temporary inability to pay debts. What is this but insolvency? Whenever one becomes unable to pay his debts according to the ordinary course of business, he is insolvent. Here the defendants admit, in terms, that they were totally insolvent, for a long time. If the mere act of making payment is an answer, the defendants may defeat any proceeding against them by information or otherwise, very easily. All they have to do, is to pay a trifle at their counter ; and plead it, either as a general bar, or *puis darrein continuance*, according to the time of the payment.

*Curia, per* SAVAGE, Chief Justice, (after stating the pleadings.) The first question respects the sufficiency of the information. Upon this, I shall only remark, that the form adopted here, is the same which was used in the celebrated case of the city of *London*, (3 *Hargr. St. Tr.* 545,) and which was there adjudged sufficient. A like precedent is given in *Rex* v. *Amery*, (2 *T. R.* 515.)

I am perfectly satisfied, therefore, with the form of the pleadings ; and shall only examine the question presented by the demurrer, on the merits of the case ; that is, whether the bank, having become insolvent and unable to redeem its paper, and having stopped business from the 2d of *July*, 1819, till the 1st of *Oct.* 1824, when it resumed the redemption of its bills, has, thereby, forfeited its charter.

I have not been able to find any adjudication which defines what nonuser shall amount to a forfeiture. Nor is it very important in this case, as it must be decided upon the statute granting the incorporation.

The tenth section enacts, " that, if at any time after the passing of this act, the said *President, Directors and Company* shall refuse, on demand being made at their banking house, during the regular hours of doing business, to redeem in specie, or other lawful money of the *United States*, their said bills, notes, or other evidences of debt, issued by the said company, the said *President, Directors and Company* shall, on pain of forfeiture of their charter, wholly discontinue and close their said banking operations, either by way of discount or otherwise, until such time as the said *President, Directors and Company* shall resume the redemption of their bills, notes, or other evidences of debt, in specie or other lawful money of the *United States*. And in case the said *President, Directors and Company* shall, at any time hereafter, offend against either of the provisions of this act, it shall be the duty of the attorney general of this state, by information or otherwise, to prosecute the said company for such offence ; and on conviction thereof, their charter shall be deemed void."

It seems the legislature anticipated the insolvency of this bank, and provided, that while insolvent, and unable to pay, it should cease doing business as a bank, until it should be able to redeem its paper, or, in other words, become solvent. The bank did, as the legislature expected, become insolvent ; and, according to its charter, stopped business until it became solvent again. At the commencement of this prosecution, it was solvent, doing ordinary business, and redeeming its bills. The legislature had not then declared how long the bank might suspend business. They have since, (*sess.* 48, *ch.* 325, *s.* 6, *April* 21, 1825,) limited that indulgence to one year ; but that act can have no effect in deciding this case.

It seems to me, that under the acts in force when this information was filed, it is a sufficient answer to say, that the bank is now doing business, and redeeming its bills ; that it had a right, recognized by its charter, to suspend business, to become insolvent, or unable to pay ; and that

if proceedings were not instituted against it till it became solvent, the right to prosecute for a forfeiture, had ceased.

Had the insolvency continued till the prosecution was commenced, the forfeiture would have been irremediable ; but the defendants, having resumed the redemption of their bills, and thereby shewn their solvency ; and having, in the mean time, complied with their charter, by discontinuing banking operations, it is now too late to complain of an insolvency which no longer exists.

The defendants are entitled to judgment on the demurrer.

Judgment for the defendants.

N. B. Woodworth, J. did notgive any opinion as to the effect of filing an information before the resupmtion of payment. And see the next case, where he delivers an opinion upon a similar replication, but does not recognize the doctrine, that filing an information would take away the right of the bank to resume payment. He there says, there must be something more than mere insolvency ; that there must be a total nonuser to work a forfeiture. And he repeats and enforces the same proposition in the next case, *The People* v. *The Bank of Hudson*.