Lane, C. J.
An information was filed, by leave óf the court, against each of these defendants to show cause by what warranty they exercise certain franchises.
The information against the Commercial Bank recites, that this corporation for six months last past, without warrant, grant, or charter, have used, and still use, the following liberties and fran *536 chises, viz: acting as a bank, owning a fund for the purpose of issuing notes, of receiving deposits, making discounts and carrying on banking operations, etc., and likewise issuing notes intended to circulate as money, payable in twelve months after date, "and also loaning such notes at the same rate of interest and paying them for debts in the same manner as notes payable on demand. ‘Whereupon the prosecuting attorney prays process against said corporation, to show by what warrant they exercise these privileges, liberties, and franchises.
Another count charges the corporation with the franchise of a bank, and conducting the usual business of such institutions without grant, warrant, or charter.
536] *The defendants, by plea, protesting against the insufficiency of the information, aver that they have not issued notes, intended to circulate as money, and payable twelve months after date, set up the act of incprporation and the amendatory acts, and aver a due organization under them, by which authority they have set up and used the several liberties therein conferred upon them. The defendants proceed to aver, that out of the profits earned by the bank since filing the information, two dividends have been made to the stockholders and taxes upon each paid to and accepted by the state.
The replication, after the usual pretexts, avers the following matters:
1. That defendants have issued and put in circulation $300,000 of notes, intended to circulate as money, payable twelve months after date.
2. That the defendants suspended the payment of their notes in coin from June 1, 1837, to August 1, 1838, and also from March 4, 1840, to April 23, 1840, and until the filing of the replication.
3. That they made loans of their bank notes, payable at a . future day, in the same manner and at the same rate of interest as of notes payable on demand, by which they received interest at a greater rate than six per cent, per annum.
4. That they expanded their circulation to an amount greater than four times the amount of the coin in their vaults, “and suddenly withdrew a great part of it from circulation.”
5. That they loaned a large portion of their funds “to their officers and a few other individuals.”
*537 To each replication the defendants have filed a several demurrer, and likewise a special demurrer to tho whole for duplicity.
Without stopping at this time to examine the objections to the forms of the pleadings, the record, bringing forward the act of incorporation, by which this corporation derived its existence, distinctly presents the question, whether a forfeiture was incurred by the commission of any of those acts of which the prosecutor complains.
*It is admitted by the demurrer that the sum of 1300,000 [537 was issued in bank notes of following form :
“ Cincinnati, March 6,1840.
“The Commercial Bank of Cincinnati promises to pay five dollars to E. T. Coolidge or order, at their banking house, twelve months after date.-
“Jas. Heth, Gash. J. S. Armstrong, Pres’t.”
These notes are averred to have been issued on March 6, 1840, and at divers other days before and subsequent. This statement extends no further than an averment of the issue on the 6th ; it is therefore not embraced by the statute of 1840, which took effect on the 23d March of that year. Eor the prosecutor demanding a forfeiture must bring his case by averments plainly within the operation of the law. It is, therefore, not necessary to consider, in this case, how far a prohibition of the legislature may avail against privileges conferred by charter; the rights of these defendants are to be adjudged by the laws in force at the time when the act complained of was done.
The charter of this institution was passed on February 11,1829. It made it lawful for the company among other things, to discount upon banking principles and usages bills of exchange and post notes, and to issue notes payable to bearer on demand and at its own office, and to draw and issue post notes and bills of exchange, payable to order at such place and at such time or day as the directors may deem expedient. 3 Chase’s L. 2059. The' bill whose issue is complained of, is a post note, the right to issue which is among the enumerated powers conferred by the charter upon the company. The statute of 1824 (Chase’s L. 1420) did not render such notes void, but rendered them payable on demand; and it is not to be construed so as to take away a power expressly and specially given by a subsequent act of tho legislature. There is nothing, *538, 539 then, in the issue of these post notes on March 6,1839, beyond the legitimate authority of the company.
588] *The next act complained of, consists in suspending specie payments from June 1,1837, to August 1,1838, and from March 4, 1839, to April 23, the day of filing the information, and afterward until the filing the replication.
If the suspension of specie payment works a forfeiture of a bank charter, this effect is .produced either by the operation of some statute, or from the intrinsic nature of the act of suspension.
The legislature of this state have nowhere declared, by express statute, that the act of suspension is a forfeiture of the franchise.0 of banking. By the statute of February 25, 1839, certain acts are. declared forfeitures, as refusing an inspection to the bank com' missioners, refusing answers under oath, neglecting to furnish monthly statements; and when a bank is finally closed by the operations of that statute, its charter is pronounced “ a dead letter.” So the neglect to furnish the documents provided by the statute of March 23,1840, shall be taken to be a forfeiture. We do not now decide anything of the effect of these measures, but cite them to show that while the legislature have declared that a forfeiture would ensue from some omissions, the refusal to pay coin is not among the number.
But that the legislature did not intend such forfeiture should ensue from a mere suspension, is plain, because they provided a different penalty. In the organic law of this company, the due payment of its notes is intended to be secured by creating a liability to pay twelve per cent, damages. Chase’s L. 2060, sec. 4. The same provision is introduced into the act of 1839, creating the board of bank commissioners. And the legislature of 1838 (36 Ohio L. 18, secs. 3, 4) removes all doubt from this matter; it is to provide a remedy for the then existing suspension, and instead' of contemplating a forfeiture of charters and a liquidation of its business for any causes then existing, it looks forward to a resumption of payments and a continuation of the exercise of their franchises when the Eastern banks resume the payment of specie 539] on their notes, *and it provides no penalty for failure except a discredit of their paper in payment at the public offices.
Since, then, we find no forfeiture of rights from the direct action of the legislature, we must next inquire whether the nature of the act of suspension itself is such as to produce it.
*540 We entertain no doubt that the suspension of specie payments may be continued long enough and be carried far enough to work an entire forfeiture of banking franchises and to authorize the sovereign to resume the powers it has conferred on a corporation. For a bank of circulation is created to provide by its credits a currency which may serve as money; whenever this currency becomes discredited, irredeemable, inconvertible, so that it no longer fulfills this end, there is a misuser of its powers, such as upon common law principles may work a forfeiture. How far this failure to accomplish the end of its creation must be carried to be attended by this result, whether this consequence follows a mere refusal to pay its debts, or whether such omission to pay must be carried to the suspicion of insolvency, are points of difference among the judges of New York, as to which, perhaps, our legislature may properly iurnish a rule, as the legislature of New York has done, but which we need not decide in this'case. 6 Cow. 196.
For forfeitures of rights and privileges are not to be incurred except under express limitation or plain abuses of powers by which the corporation ceases to fulfill the design of its institution, and forfeitures are not to be favored when the legislature has provided other remedies adequate to correct the evils. The legislature, in the charter of this bank, looking to this event, have provided such a remedy, believing that it was better to secure to the holder of its notes twelve per cent, damages for a neglect to pay its debts, instead of the multiplied inconveniences and derangements involved in a liquidation and close of its business. Until, .therefore, an entire derangement of the business of the company shall occur, there is no necessity for us to look out for causes of forfeiture when the legislature plainly did not intend to exact it.
*The next ground of forfeiture is the loan of its post [540 notes, in the same manner and at the same rate of interest as if they had been payable on demand. Without denying that such an act, if a part of' the contract, might admit being interpreted into a taking of more than six per cent, interest on a loan, it still is to •be inquired if this be an act of forfeiture. It admits two answers.
The charter of this bank contains no restriction as to the rate of interest. Singular as it may be that no such a provision exists, there is no other check upon the contract against the receipt of any rate of interest except the general law; and by their general power to make contracts, they have the same right to stipu *541 late concerning interest on their lawful contracts as individuals; and their contract, like the contracts of individuals, are not void, although judgments will be rendered for six per cent, interest only. There is, then, no illegal act done by the company, even if it be proved they have taken such interest.
But if there was such a restriction upon their power to contract as is contained in most other b'ank charters, it is not a ground of forfeiture. It is a case whore the contract itself is void for the want of powers; but the attempt to do what they are unable to do does not destroy their power of doing what they lawfully can do.
4. The expansion of their circulation to a sum four times greater than the amount of their coin and suddenly withdrawing a great part of it.
Without adverting to the extremely ambiguous terms of the charter, by which the privilege of owing at least twice the amount of its capital is secured to the company (Chase’s L. 2059, sec. 3), a specific remedy is provided for this, in making the directors personally responsible for this excess. The act of February 25, 1839, sec. 10, makes this provision a general law, and yields the fair inference that the legislature deemed this a sufficient security without creating any disability in the institution itself. As to the sudden return of its circulation, I suppose this was not an act of 541] the company, *but was produced by the natural operations of business, and one which I doubt not the officers of the corporation resisted to the utmost of their power.
The complaint, that a “ large portion of their loans have been made to their officers, and to a few other individuals,” need hardly be noticed, even if alleged with greater certainty. It might be well if restrictions were imposed by the legislature, upon the amount of its loans to its officers, and oven to others, but until such rules are prescribed by the sovereign power, the selection of its debtors, and the distribution of its loans, are confided to the discretion of the managers.
The last ground which'the prosecutor assumes, is, that all banks constituted by states are unlawful institutions, because the constitution of the United States declares no state shall issue bills of credit. After the existence of such corporations, over since the existence of the constitution, and the actual circulating medium *542 ■which our country has lived by, ever since my earliest recollection, I can not regard this as now a judicial question.
We have then considered this ease upon its merits, without regard to any objection to forms, and we find no ground for a forfeiture of its chartered rights. As this is the first proceeding under the statute of quo warranto, it affords us an opportunity to say something concerning the forms of proceeding.
We think the prosecutor may pursue two courses. He may disclose in his information, the specific ground of forfeiture, or he may adopt the mode of pleading in this case. Here, the information, in general terms charges the defendant with exercising certain sjiecified franchises without authority, and calls upon him to show by what warrant he possesses these powers. The plea should deny the facts, or sot forth the authority. The replication may then bring forward the acts upon which the prosecutor relies as working the forfeiture, which may be denied or demurred to, in the rejoinder. By this form of pleading, the authority to act is disclosed by him who claims to possess it, and the acts claimed to be unauthorized are averred by the party who complains of their exercise.
*It is not necessary for us to advert to the defects in this [542 replication, although sufficient certainty is found in hardly one of its averments; because the facts complained of, however set forth, are no ground of forfeiture.
In the case of the Lafayette Bank the same questions are presented, and in both eases the demurrer to the replication is sustained and judgment is entered for the defendants.
The case of the Franklin Bank is nearly identical with the two just disposed of. It is only necessary to look to the points of difference.
The act of forfeiture assumed, is not in the issue of post notes, •but in the issue of orders on the Branch Bank of Terre Haute, in Indiana, in the form of bank notes, and designed' for circulation. The time averred is in January, 1840.
This charter does contain a restriction on the issue of notes payable to bearer at any other office than their own on demand; and it inhibits the issue of any notes, payable to bearer and on demand, for less than five dollars, except of the denomination of ones, twos, and threes. The note set forth is payable to order, and for ten dollars, and thus not within the terms of prohibition. *543 It is rendered illegal by the general law only, and no such general prohibition is found, until the act of March 23,1840, a period after the commission of this act. Now the employment of this means to extend their circulation is not to be approved, and prudent men will view an institution which recurs to it with distrust, but there is no room to claim a forfeiture of privileges until the act becomes illegal.
J. T. Crapsey, Prosecuting Attorney.
N. Wright, for the Commercial Bank.
S. P. Chase, for the Lafayette Bank.
E. S. Haines, for the Franklin Bank.
Judgment for the defendants.
The other ground of complaint, differing from those in the other cases, consists in the issue of notes whose denominations are one, two, and three dollars. The right to issue such notes appear to be conferred by section 2 of the charter. Chase’s L. 2078. The law of 1838 permitted such issues; the law of 1840 forbid them. Now this issue is alleged to have been made “ during all the time in said information mentioned,” and the information avers a time in which ,543] it was permitted. It is *not necessary, then, for us to determine whether the law be stronger than the charter, unless the case be clearly brought within it by pleading.