HENRY N. WALKER, ATTORNEY GENERAL, *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE MICHIGAN STATE BANK.

2d  359
153  ¹227

In pleading it is not necessary for a party to allege any more than will constitute, *prima facie,* a sufficient cause of action or defence ; all beyond this is *surplusage.*

To an information in the nature of a *quo warranto* requiring a corporation to answer by what warrant it claimed to have, use and enjoy certain corporate powers, &c. which it was therein alleged to have usurped, a plea setting forth the charter of the corporation, by which the powers claimed were conferred, *in presenti,* is a *prima facie* defence ; for the commencement of a legal existence being thus shown, it will be presumed that the corporation continued to exist, and to perform its duties, until the contrary is alleged.

And where, in addition to this, the plea contained allegations intended to show, either a continued existence of the corporation down to the filing of the information, or that the state was estopped from insisting upon forfeiture of the corporate franchises for causes which arose prior to a certain period, *it was held,* that these allegations were surplusage, and, on motion, they were ordered to be stricken out.

THE case is stated in the opinion of the court delivered by

WHIPPLE, J. An information in the nature of a *quo warranto* was filed against the defendants, by the Attorney General, on the 14th October, 1845. The information in substance states, that the defendants, " for the period of six months now last past, have used, and still do use, without any warrant, grant, or charter, the following liberties, pri-

vileges and franchises, to wit : that of being a body politic
and corporate in law, fact and name, by the name of," &c.;
"and the following liberties, privileges and franchises, *to
wit*: of being and becoming proprietors of a bank, or fund
for the purpose of issuing notes, receiving deposites, ma-
king discounts, and transacting other business which incor-
porated banks may lawfully transact," &c.:   Whereupon,
the said Attorney General prays the advice of the court
in the premises, and due process of law against the Presi-
dent, Directors & Co. of the Michigan State Bank afore-
said, in this behalf, to be made to answer to the said Peo-
ple, by what warrant they claim to have, use and enjoy the
liberties, privileges and franchises aforesaid.

To this information the defendant appeared, and on the
14th November, 1845, filed a plea, which, after stating, in
substance, that by an act of the legislative council, passed
March 16th, 1835, they were constituted a  body politic
and corporate for a period of twenty years from the pas-
sage of the act, and that, by force of the act, they become
entitled to, and used the liberties, privileges, and fran-
chises of becoming proprietors of a bank, or fund for the
purpose of issuing notes, receiving deposites, making dis-
counts, &c., proceeds at great length to state among other
things that, in the years 1838 and 1839, the bank became
the depositors of the funds of the state ; that in conse-
quence of the embarrasments of the country &c., they were
unable to pay a debt of about $500,000 due the state ;
that on the 1st February, 1840, the legislature passed an
act, authorizing a settlement with the bank ; that nego-
tiations were had between the parties, which eventuated
in a settlement, the terms of which are stated ; that the
state, professing to be dissatisfied with the terms of the
settlement, on the 17th February, 1842, sanctioned the
settlement, except the portion thereof by which the state
was bound to indemnify the bank against certain liabilities,

&c.; that the bank, feeling aggrieved by this act, instituted proceedings in chancery against the trustees of the property assigned by the bank, and the trustees instituted in the same court proceedings against the bank and others, charging upon the bank insolvency.   The plea then gives a history of these suits and their final determination, and then refers to negotiations by which the difficulties between the bank and the state were eventually settled.

A motion was made by the Attorney General to strike out as surplusage, all that part of the plea relating to the condition of the bank in the years 1838 and 1839, the negotiation and settlement with the state, and the several acts of the legislature in relation to such settlement, and the history of the several suits instituted by and against the bank &c.

If that portion of the plea, to which exception is taken, is mere surplusage, the motion is appropriate.   Whether the motion is well founded or not, must depend upon the application to the matter objected to as surplusage, of a few elementary rules of pleading.   "It is not necessary in pleading to state matter which would come more properly from the other side." Steph. Pl. 350.  The true meaning of the rule is, "that it is not necessary to anticipate the answer of the adversary, which, according to Lord *Hale*, is like leaping before one comes to the stile." It is sufficient, says the same author, that each pleading should in itself contain a good *prima facie* case, without reference to possible objections not yet urged.   *Gould* thus states the rule:   "In general, it is not necessary for either party to alledge more than will constitute, *prima facie*, a sufficient cause of action or defence.   It is therefore, in general, unnecessary for a party to deny, or avoid by *anticipation*, all or any of the possible facts, which might furnish sufficient answers in law to his own allegations." Gould's Pl. 167.   The same rule is affirmed by *Chitty*,

who says that, " in general, whatever circumstances are necessary to constitute the cause of complaint, or ground of defence, must be stated in the pleadings, and all beyond is surplusage." 1 Chitty's Pl. 246. This rule, like all others in the law of pleading, is founded in sound logic; and, in practice, it is both reasonable and convenient, as a contrary practice would lead to confusion and prolixity. Illustrations of the rule are to be found in the examples given in the elementary works from which I have quoted, and numerous adjudicated cases might be cited to show its extent and application. Let us apply the rule to the case before us. The information alledges that the defendants have used, without any warrant, certain liberties, privileges and franchises. The defendants answer by setting out a charter, by which they are warranted in using the liberties, privileges and franchises, they are charged with having usurped. Does this constitute a good *prima facie* defence to the information, without reference to the other matters set out in the plea? This question may be tested by supposing a general demurrer to be interposed to the plea; the demurrer would admit the truth of the matter pleaded, and the judgment of the court cannot be doubted; the defence would be regarded as perfect and conclusive. The same result would follow if issue were taken upon the plea, and the same facts proved on the trial of the issue, which would be admitted if a demurrer were interposed. The only possible purpose of the other allegations in the plea must be either ; 1st, to show that the state is estopped from insisting upon any cause of forfeiture, which might have accrued anterior to the acts of the legislature referred to in the plea, and the contracts therein stated to have been made between the state and the bank ; or 2d, to show a continued corporate existence down to the time of the usurpation alledged in the information.

Attorney General *v.* Michigan State Bank.

That the plea cannot be sustained on the first ground, seems to me very clear from what has already been stated. It is anticipating matter which should properly come from the other side, and thus involves a violation of a fundamental rule of pleading. The charter would prove that the corporation was legally created, and the law will intend that it performed all its duties. Besides, it is making an issue when no issue is tendered. The plea not only avers matter, which if true would constitute a full answer to the information, but purports, also, to answer matters not averred in the information; in other words, it *presumes*, that the Attorney General will insist upon a forfeiture of the charter by the corporators, for causes arising anterior to a certain period; and the object of setting out the acts of the legislature, and the contracts before refered to, is to answer such a *supposed* state of facts. But I have said that this court will intend that the defendants have performed all their duties until the contrary be shown. 9 Wend. 379. We cannot *presume* that the defendants have done any acts which will involve a forfeiture of chartered rights, or draw down upon them the infliction of a heavy penalty. It may be that the Attorney General will not reply facts, which if found true, would constitute a ground of forfeiture; or if a forfeiture is urged, it may be for causes occurring *subsequent* to the acts and contracts spread out in the plea; in such a case the matter objected to would be inapplicable, as it purports to be an answer to causes of forfeiture arising *anterior* to these acts and contracts. This reasoning illustrates the propriety of the rule I am seeking to enforce; it shows, that the portion of the plea which we are called upon to reject as surplusage, might be good or bad, according to circumstances. Whether it be good or bad, we will determine when the Attorney General alledges upon the re-

HARVARD LAW SCHOOL LIBRARY.

cord, causes of forfeiture, to which the plea would be a legal answer.

In respect to the second ground upon which the objectionable matter is sought to be sustained, a satisfactory answer may be given. By their plea, the defendants show the commencement of a legal existence, under a valid charter, not yet expired. From this the law will *presume* their continued esistence down to the period of the filing of the information. *People* v. *The President, &c. of the Manhattan Co.*, 9 Wend. 379 ; 3 Ph. Ev. by Cow. & Hill, 295. The defendants, have, therefore, alleged what the law will presume ; this was unnecessary, and therefore surplusage. Steph. Pl. 354.

The views I have expressed in regard to the appropriate mode of pleading in cases like that under consideration, are strongly fortified by the precedents to be found in the elementary works, and in reported cases. *People* v. *Bank of Niagara*, 6 Cow. 196 ; *People* v. *Washington and Warren Bank*, Id. 211 ; *People* v. *Bank of Hudson*, Id. 217 ; *People* v. *Utica Insurance Co.*, 15 John. 358.

It was insisted in argument, that the case of the *People* v. *The Manhattan Co.*, 9 Wend. 351, furnishes an authority in favor of the validity of the plea in this case. I have given to that case a critical examination, and am unable to discover the analogy that was said to exist between it and the one before us. The information charged the defendants "with using, without lawful warrant or charter, the franchise of being *a body politic and corporate*, and of *carrying on banking operations*, without being authorized so to do. The defendants pleaded the act incorporating the company, and subsequent acts of the legislature recognizing their continued existence. The original act of incorporation contained a *proviso* that the company should, within ten years from the passing of the act, furnish and continue a supply of pure and wholesome water, sufficient

for the use of all such citizens dwelling in the city of New York, as should agree to take it on the terms to be demanded by the said company; in default whereof, the corporation should be dissolved.   There was a further provision authorizing the company to employ its *surplus capital* in the *purchase of public or other stock, or in any other monied transactions or operations*, &c.   Now, it is clear that the Attorney General regarded the charter as forfeited in consequence of a breach of the condition upon which the continuance of the corporation depended.   The proviso was treated as a condition in *deed*.   The defendants may have supposed that a compliance with the proviso was a *condition precedent* to their existence as a corporation.   An averment in the plea, therefore, that the condition was performed, would, in such a case, be proper; or, if the condition was not performed, then it would be competent to spread upon the record facts which would amount to a waiver of its performance by the legislature.   The act of incorporation, it is very true, created the individuals therein named, a corporation *in presenti*, and the proviso was strictly a *defeasance ;* but still the counsel might desire to test the true character of the proviso, and for that purpose, and from abundant caution, embodied in the plea several acts of the legislature.   Again : It was said by the Attorney General in argument, "that the information asserts no right on the part of the People, but calls on the corporation to show their title—*a present title, embracing, of course, a performance of every condition.*"   And further, that " the grant is made upon a condition, and in default of performance, the act declares that the corporation shall be dissolved."   If this view of the case was correct, it was not only competent, but necessary, that the defendants should aver in their plea a performance of the condition precedent, or facts from which a waiver might be implied.   But there exists a still more conclusive reason,

why no objection was taken to the plea in that case. The defendants claimed that they had the right to carry on *banking operations;* the right was based on the original act of incorporation ; but it was quite manifest from the whole case, that it might have been dangerous to rest this right on so slender a foundation. Hence several acts of the legislature were referred to in the plea, recognizing the existence of the corporation, and that they were endowed with banking powers. These acts might have been referred to for two purposes : 1st. To show a legislative construction of the original act which gave them a legal existence ; and, 2d. It might be well argued, that if the original act did not confer on the defendants the faculties which usually appertain to banking incorporations, the several acts set forth in the plea did. The case shows that this was the great object and purpose of embodying in the plea the several acts of the legislature therein set forth, and from which the conclusion was almost irresistible, that banking powers were originally granted, or if not, that these powers were enlarged so as to sanction the defendants in using the franchises alleged in the information.

Upon the whole, we are of opinion that the motion of the Attorney General must be granted.

*The Attorney General* and *S. T. Douglass,* in support of the motion.

*J. F. Joy,* contra.