(Hamilton County Court of Common Pleas.)

ALBERT S. LONGLEY, Adm'r. of the Estate of John W. Sewell, deceased, v.
JOHN W. SEWELL et al.

*Method of procedure where an administrator attempts to sell real estate which his intestate conveyed away in his lifetime in fraud of his creditors.*

1. An administrator's power to sell real estate which his intestate conveyed away in his lifetime in fraud of creditors, is wholly derived from the statutes. If his proceedings are not in conformity with the methods prescribed by the legislature, they are void.
2. He may within four years after the death of his intestate choose either of two methods of procedure; (1) He may bring ejectment in the court of common pleas for the recovery of the possession of the land either before or at the time of filing his suit in the probate court to sell the land to pay debts; or (2) He may in one action seek to avoid the fraudulent conveyance and pray for a sale of the land.
3. If he seeks complete relief in one action, that action must be brought in the court of common pleas.
4. He can not bring such action in the common pleas, obtain an avoidance there of the conveyance, and then institute an action in the probate court for the sole purpose of selling the land to pay debts.
5. While such action brought in the common pleas is pending, and four years after the death of the intestate has elapsed, the probate court has no jurisdiction. Sections 6139 and 6140, Revised Statutes, construed.

(Decided October, 1895.)

---

HOLLISTER, J.

The plaintiff filed a petition in the probate court July 1, 1891, to sell real estate to pay debts. Sale was made. On July 3, 1893, he filed a supplemental petition, alleging that he had by oversight omitted from the petition three certain lots of land, and, alleging also that certain

debts, of which he attached a schedule to the supplemental petition, were unpaid, prayed for a sale of the three lots. The debts were balances due the same creditors named in the schedule attached to the original petition.

The defendants, the Sewells, deny the right of the plaintiff to sue, for the reason that their intestate was not the owner of the property at the time of his death; but that they were the owners through certain conveyances, originating with the intestate, their father.

The Union Savings Bank & Trust Company, defends on the ground that it loaned $24,000 to Hattie T. Sewell, one of the defendants, and took a mortgage from her by way of security, covering two of the lots in question, in ignorance of plaintiff's rights, if he had any, and claims the protection accorded by law to innocent purchasers.

The plaintiff claims that the conveyances relied on by the Sewells had all been adjudged fraudulent by the district court of this county within four years after the death of Sewell; that the records of that court and of the court of common pleas showed that fact, and that the trust company had notice of the state of the record through an abstract of title procured by its counsel before the loan was made.

This statement sufficiently presents the issues raised by the pleadings.

The facts present a question which, if decided against the plaintiff, leaves no occasion to discuss several other issues raised.

In 1877 John W. Sewell died. Prior to his death, in 1871, Andrew J. Pruden had obtained a judgment against him in the Superior court, and filed a suit in the common pleas, seting up the judgment, return of execution unsatisfied, the execution threafter of conveyances by Sewell of certain real estate in fraud of creditors, prayed that the same be set aside, that the real estate be sold and the proceeds applied on his judgment. The defendants, Sewell and the fraudulent grantees, answered, denying the fraud, and averring that Sewell's debts had all been settled by proceedings in bankruptcy through which he had received a discharge. Pruden, in 1879, filed an amendment and supplement to his petition, describing the property embraced in plaintiff's original petition and supplemental petition in the probate court, set forth at greater length the facts constituting the fraud, and prayed that the conveyances, describing each of them, be set aside, that the property be sold, and the proceeds applied to his judgment.

Then came one David D. Long, and on July 31, 1891, filed an answer and cross-petition as follows:

"Now comes David D. Long, and for answer to the petition herein says that on the 22d day of February, A. D. 1879, he was duly appointed and qualified as administrator of the estate of John W. Sewell, deceased, mentioned in the amended and supplemental petition herein; that the allegations of the several petitions herein are true; but that there is no personal estate whatever belonging to said estate; that there are a large amount of debts, greatly exceeding the claim of plaintiff, with which there is no property whatever to pay, unless the property described in the said petitions be sold for that purpose.

"Wherefore this defendant asks the court to make an order directing the sale of said real estate, and directing that the money arising from said sale after the said plaintiff's claims and the costs herein, be paid over to this defendant as administrator, to pay the residue of the debts and expenses of said sale."

In due course the cause became at issue, and on December 27, 1879, judgment was entered, the entry reciting among other things, that the "cause came on to be heard upon the petition and amendment thereof and

supplemental petition, the answer and cross-petition of David D. Long, administrator, and the other pleadings" (The Sewells being in default) "and the evidence, and was argued by counsel: on consideration whereof the court finds the issues joined in favor of the plaintiff and of the cross-petitioner, David D. Long, administrator, etc."

The court then found that the real estate described was conveyed by Sewell in his life-time in fraud of his creditors, and was at the time of the commencement of Pruden's action, and of the death of Sewell, the property of Sewell.

And it was further found, "that said David D. Long, administrator, has no personal or real estate in his hands, and that the balance (if any) of the proceeds of the sale of said real estate, after satisfying plaintiff's said claim, will be necessary to pay the debts of said John W. Sewell, and that it is necessary to sell said real estate described as tract No. 1 in the supplemental petition to pay said debts."

And the court decreed that the deeds (describing them) were void. The Sewells appealed to the district court.

In that court a motion was made by the paintiff and Long, administrator, for an order requiring the defendants to produce at the trial the deeds and mortgages mentioned in the pleadings, and set forth in the motion.

Thereupon, on January 8, 1881, the court granted the motion, and ordered the production of the deeds; and on February 23, 1881, the cause came on for hearing on the pleadings, including the cross-petition of David D. Long, administrator; Benjamin Butterworth, trustee of Hattie F. Sewell, and Harriet M. Sewell, trustee of Hattie F. Sewell, being, with other defendants, in default for answer, and the decree recited among other things that, "thereupon, during the progress of the trial after the plaintiff and cross-petitioner had introduced evidence tending to prove the issues on their part, and before they had rested their case they called upon the defendants to produce the deeds and mortgage mentioned in the order heretofore entered herein on January 8, 1881 * * and the defendants not hereinbefore found to be in default for answer or demurrer, and each of them, by their counsel, refusing to produce said deeds and mortgage, or either of them, it was thereupon, on motion of the plaintiff and said Long, administrator, ordered by the court that they have judgment against said defendants by default. It is therefore considered by the court that the allegations of the petition as amended, and of the supplemental petition, and of the answer and cross-petition of said Long, administraor, are true, and that the plaintiff and said cross-petitioner are entitled to the relief prayed for."

The decree then found the amount due the plaintiff on his judgment, and "ordered, adjudged and decreed that the real estate described in the petition, or so much thereof as may be necessary for the satisfaction of said claim of the plaintiff, and all the right, title and interest of each and all the parties to this action in said real estate, be sold as upon execution by Albert S. Longley, master commissioner, and that out of the proceeds thereof he pay first, the taxes due thereon; secondly, the costs of this action; and thirdly, to the plaintiff the amount before found due him. It is further ordered that the cause be referred to Albert S. Longley, master commissioner, to ascertain and report the amount of the debts of the said John W. Sewell, deceased, other than the plaintiff's, and further order for the sale of the residue of said real estate for the payment of said debts is deferred until the coming in of said report."

Assuming, for the purposes of this case, that the record of these proceedings was properly restored after their destruction at the burning of

the court house in 1884, it is important to determine the nature of the action taken by the administrator of Sewell, and his authority to take any action.

It was early held in this state that under that section of the statutes of fraud and perjuries, substantially re-enacted in section 4196, Revised Statutes, every conveyance made in fraud of creditors was absolutely void as to them. (Burgett v. Burgett, 1 O., 469; Barr v. Hatch, 3 O., 527, 530; Douglas v. Dunlap, 10 O., 162; Sockman v. Sockman, 18 O., 362, 366; Tremper v. Barton, 18 O., 418; Brown v. Webb, 20 O, 389.)

It is only necessary for the creditor to seize upon the property by legal process of some sort. (Hallowell v. Bayliss, 10 Ohio St., 536, 543.) He may, after judgment, cause an execution to be levied, and the purchaser will, upon sale under execution, obtain as valid a title as if the conveyance had not been made. (Westerman v. Westerman, 25 Ohio St., 500 510.) So far as the validity of the title is concerned, there is no occasion for the creditor to go into chancery to have the fraudulent deed set aside; but he may do so for the purpose of removing the cloud on the title cast by the record of the deed, and thereby enable the property to bring a better price on sale. (Sockman v. Sockman, *supra*; Beaumont v. Herrick, 24 Ohio St. 455, 456; Gormley v. Potter, 29 Ohio St. 597.)

But the relief to which creditors are entitled, did not extend to administrators of deceased grantors in fraudulent conveyances.

In the December Term, 1846, the Supreme Court, in Benjamin v. LeBaron, 15 Ohio, 518, a case wherein the administrator of a fraudulent grantor of chattels brought trover against the fraudulent grantee, use this language at page 526: "We hold that the administrator can only maintain such action as the intestate might, if living. He represents the intestate; he steps into no other right,   *   *   as between the vendor and vendee   *   * the vendor had no rights, and of course, his administrator could have none;" and intimate that the administrator might have relief in chancery. Judge Birchard dissented from the conclusion in this case, and Judge McIvaine, speaking for the court in Kilbourne v. Fay, 29 Ohio St., 264, 280, evidently disapproves of it.

The case is, however, approved and cited in McCall v. Pixley, 48 Ohio St., 379, where, at page 387, the court say: "The powers of administrators with respect to the real estate of the decedent, are derived in this state from statutory enactment. They have none by the common law. The administrator can not, therefore, impeach the fraudulent conveyance of his intestate, except when authorized by statute." To the statute, then, we must look for the authority under the sanction of which Long, as administrator, could proceed.

In 1840 (38 Ohio L., 167, sec. 121,) the legislature, providing for sales of real estate by executors and administrators to pay debts, enacted that: "The real estate liable to be sold   *   *   shall include all that the deceased may have conveyed with intent to defraud creditors, and all other rights, interests in lands, tenements and hereditaments: Provided that lands so fraudulently conveyed shall not be taken away from any one who purchased them for a valuable consideration, in good faith, and without knowledge of the fraud, and no claim to lands so fraudulently conveyed shall be made unless within four years next after the decease of the grantor."

Section 122 reads: "If the executor or administrator shall be ordered to sell any lands so fraudulently conveyed by the deceased, he may before sale obtain possession by an action of ejectment, counting as upon his own seizin; or he may file a bill in chancery to avoid the fraudulent conveyances." The statute of 1840 seems to have remained unchanged until

1878, (Curwen, secs. 121, 122, p. 733;Sayler, p. 3592), when section 122 was amended, and will be found in 75 O. L.,s ec. 147, 9. 890. It there reads:

"If land is to be included in such action which has been so fraudulently conveyed, the executor or administrator may either before or at the same time bring an action for the recovery of the possession of such land; or he may in his action for the sale thereof allege the fraud and have the fraudulent conveyances avoided therein; but when such land is included in the application before a recovery of the possession thereof, the action shall be in the court of common pleas." These laws are found in 75 O. L., 890, were carried into the Revised Statutes of 1880, sections 6139 and 6140, and are the law to-day. The administrator of Sewell had, therefore, two remedies, either one of which he might pursue within four years after Sewell's death. He might bring ejectment for the recovery of the possession of the land either before or at the time of filing his suit in the probate court to sell the land to pay debts, or he might in one action seek to avoid the fraudulent conveyances and to sell the land so conveyed. He could not have both. He chose the latter, and the statute providing that in pursuing that remedy "the action" shall be in the court of common pleas," he, by his cross-petition of 1879, in Pruden's case, brought his action in that court. The action could not properly have been brought in any other court. (Spoors v. Coen, 44 Ohio St., 497.)

It will be noticed that the right is not given the administrator to file a petition alleging the fraud and praying that the conveyances be set aside; but that when he seeks that relief, it can only be had in an action brought in the court of common pleas for the purpose of selling the fraudulently conveyed real estate to pay debts.

When, therefore, Long filed his cross-petition in Pruden's case, he elected to pursue his remedy in the common pleas, and permitted the four years after Sewell's death to elapse without bringing his action to sell in the probate court, and his prior or contemporaneous action of ejectment.

By such election and proceeding the probate court was ousted of its jurisdiction, and the administrator must pursue his remedy in the common pleas to its conclusion. He can not be permitted to say that he obtained part of his remedy by the finding of the district court that he was entitled to the relief prayed for, and that thereby the conveyances were set aside, and, being set aside, he had the right to sell in the probate court; for the statute does not give him the power to split his action.

Assuming for the purposes of this case, that the allegations in the cross-petition are sufficient, the administrator has now pending in the circuit court an action properly brought in which he can obtain full relief.

If this conclusion is correct the probate court had no jurisdiction to entertain the supplemental petition, and the appeal must therefor, be sustained. When this case was submitted, there was also submitted an action brought by the Sewells to quiet the title of the three lots in controversy. On the assumption that the plaintiff here will appeal this case to the circuit court, or seek in that court to work out his remedy, if he now has any, on his cross-petition in the Pruden case, and that there all of the questions in controversy between the parties will, in either event, be determined, the action to quiet title will be dismissed.

Wilby & Wald and Jesse Lowman, for the administrator.

George W. Harding, for the Sewells and the Union Savings Bank & Trust Co.