The People of the State of New-York *against* The President, Directors and Company of the Bank of Washington and Warren.

On information in nature of a *quo warranto.* The pleadings were nearly the same in this, as in the preceding case of *The People* v. *The Bank of Niagara,* (ante, 196.) The information was filed in both cases at the same time ; and the difference in the pleadings will appear by a summary of them given in the opinion of the court.

Insolvency and refusal to pay bills, &c. in specie or other lawful money, on demand, &c. are not, of themselves, within the act, (*sess.* 40. *ch.* 185,) incorporating The President, Directors and Company of the Washington and Warren Bank, a ground for an information in nature of a *quo warranto,* or other proceeding, to oust them of their corporate rights.

To work such forfeiture, there must be a total nonuser. Per *Woodworth, J.*

The statute (*sess.* 48, *ch.* 325, *s.* 6,) passed *April* 1, 1825, is prospective in its operation as to the causes of forfeiture : but not exclusively so as to the remedy.

*Talcott*, (attorney general,) in support of the demurrer, made the same points as in *The People* v. *The Bank of Niagara ;* and also insisted on the special causes of demurrer mentioned by the court.    He cited 5 *Mass. Rep.* 230 ; 12 *Mod.* 19 ; 19 *John.* 456 ; 4 *Mod.* 58 ; 2 *Show.* 278, 9 ; *Skin.* 310 ; *Com. Dig. Franchises,* ( *G.* 3 ;) *Laws N. Y. sess.* 40, *ch.* 185, *s.* 5 ; 4 *John.* 457, 460 ; 1 *Phil. Ev.* 163, *and cases there cited in the notes, ed. of* 1820 ; 6 *T. R.* 265 ; 2 *Saund.* 291, *a ;* and 2 *Kyd on Corp.* 497.

*B. F. Butler* and *A. Spencer*, contra, cited 19 *John.* 349 ; *Laws N. Y. sess.* 40, *ch.* 185, *s.* 10 ; 1 *Hopk. Ch. Rep.* 354, 360 ; 5 *John. Ch. Rep.* 366 ; 19 *John.* 456, 474 ; 20 *John.* 404 ; 1 *Chit. Pl.* 586.

One question made by the defendants, in addition to those which were raised in *The People* v. *The Bank of Niagara,* was, whether the remedy should not have been by a *sci. fa.* instead of an information in nature of a *quo warranto.*

*Curia, per* WOODWORTH, J.    This is an information filed by the attorney general, alleging that *The President, Directors and Company of the Bank of Washington and Warren,* without any warrant, grant or charter, have, for more than six months, used, and still do use, certain liberties, privileges and franchises, in the information set forth ; and praying that process may be had against them, to answer by what warrant they claim to use and enjoy these privileges, &c.

The defendants plead, that on the 7*th* of *April,* 1817, by an act of the legislature, they were constituted a body politic, by the title mentioned in the information, to continue till *January* 1, 1832 ; that by the provisions of the act, they continue to be a body politic and corporate ; and are entitled to use all the rights, privileges and franchises, allowed to them by the act ; by virtue of which, for all the time in the information mentioned, they have used, and still do use, the liberties, privileges and franchises of being proprietors of a bank, for the purpose of issuing

notes, receiving deposits, making discounts, and transacting other business, which incorporated banks may lawfully transact, by virtue of their respective acts of incorporation ; and also of actually issuing notes, receiving deposits, making discounts, and carrying on banking operations, and other monied transactions, which are usually performed by incorporated banks ; and claim the right conferred on them by the act to have and use all these privileges, &c. ; concluding with a traverse.

The plaintiffs replied, by separate replications, several distinct matters.

*First*, that the defendants did wilfully and negligently so transact the affairs of the corporation, that on the 1*st* of *January*, 1818, the total amount of debts due by the corporation, over and above the specie deposited in the bank, did exceed three times the sum of the capital stock subscribed and actually paid in.

*Secondly*, that the defendants refused, on demand, to redeem in specie, or other lawful money, the bills, notes and evidences of debt issued by them ; and that they did not wholly discontinue and close their banking operations, until such time as they resumed the redemption of their bills, notes and other evidences of debt ; and before they resumed the redemption of them, they received deposits, discounted notes, and issued promissory notes.

On these replications, issues are joined to the country.

*Thirdly*, the plaintiffs reply, that after the defendants had entered on the business of banking, to wit, on the 2*d* of *May*, 1818, large amounts of their bills, notes, and other evidences of debt, had been put, and then were in circulation ; and while so in circulation, *by the fraud, neglect, or mismanagement of the defendants, or of some or all of their officers or agents, they became wholly insolvent, and unable to redeem their bills in specie or other lawful money ; and on that day, discontinued, and closed their banking operations ; and from that time, until the* 1*st of July*, 1824, *neglected to resume their business, by way of discount or otherwise.*

The defendants rejoin, admitting their inability to re-deem their notes in circulation ; and that they discontin-ued and closed their banking operations, as alleged in the last replication ; and they then plead, that *they did not, by the fraud, neglect or mismanagement of the defendants, or of some, or all, or any of their officers or agents, be-come wholly insolvent, or unable to redeem their bills, &c. in circulation, in specie or other lawful money.*

To this rejoinder, the plaintiffs demur ; and assign for cause,

1. That it attempts to put in issue an immaterial ques-tion, to wit, whether they became insolvent by reason of the fraud, &c. set forth ; whereas, it is immaterial, wheth-er the insolvency was occasioned by such fraud or not.

2. Because the rejoinder is a negative pregnant ; as by averring that the insolvency was not by reason of such fraud, &c. it admits they did become insolvent, and unable to redeem, for some other reason.

The defendants join in demurrer.

It was stated on the argument, by the defendants' coun-sel, that no objection would be taken to the form of the in-formation.

If the replication is good, independent of the causes which it assigns for the insolvency, the rejoinder is then bad, for the reasons given by the special causes of demur-rer. If the allegation that the insolvency was occasioned by fraud, &c. is immaterial, the averment of the existence of such insolvency, and not the cause thereof, was what the defendants were bound to answer ; and on this ground the rejoinder is bad. If, however, it was material to allege in the replication, that the insolvency was produced by fraud, &c. then the rejoinder is good ; for it negatives material facts, to wit, the causes of insolvency ; and on this ground cannot be considered a negative pregnant, although it im-plies that the insolvency was owing to other causes.

The material question is, whether the replication be good in substance.

The act to prevent fraudulent bankruptcies, passed *April* 21, 1825, is prospective in its operation. Its effect,

in this case, is on the form of the remedy merely. The grounds of forfeiture contained in the act apply to cases thereafter to arise.

The facts stated by the replication are not a cause of forfeiture in the act of *April* 7, 1817, by which the defendants were incorporated. (*Vid. sess.* 40, *ch.* 185.) The 10th section declares, that on refusal to redeem in specie, the defendants should, on pain of forfeiture, discontinue and close their banking operations, until such time as they should resume the redemption of their bills. It farther allows 10 *per cent.* damages on all notes, which shall have been demanded and not paid. It has been adjudged that the damages thus given are exclusive of legal interest. (*Wendell* v. *The Washington and Warren Bank,* 5 *Cowen,* 161.)

It will be seen by this specification, that the time for resuming operations is not limited in terms, nor was it intended to be. I think it manifest the legislature did not intend that the refusal to pay on demand should be a ground of forfeiture, whatever may have been the cause of refusal ; but on the contrary, they intended that the business of the bank might be again commenced at an indefinite period, whenever the defendants should resume the payment of their bills. If this be the construction, of which I have no doubt, it follows, that, whether the suspension was six months, or six years, there was no cause of forfeiture. It was considered that 10 per cent. damages, beyond legal interest, would be a sufficient impulse to resume business at an early day, without specifying, as in the act of *April* 21, 1825, that insolvency, neglect to redeem, or suspension of business for one year, should be deemed and adjudged a surrender of their rights. It seems to me, then, that the facts admitted by these pleadings, to wit, an insolvency at a particular time, a suspension of business from that to another period, and then the resumption of banking operations, present a case contemplated by the act, and by it protected against forfeiture.

It does not become necessary, in the view I have taken, to consider whether the facts here presented, would have

UTICA,
Aug. 1826.

The People
v.
Washington &
Warren Bank.

been sufficient cause for dissolving the corporation, had the 10th section in the act of incorporation been omitted. I entirely subscribe to the doctrine in *Slee* v. *Bloom*, (19 *John.* 456.) Suffering an act to be done which destroys the end and object for which a corporation is instituted, must be regarded as equivalent to a direct surrender. It cannot then answer the end of its institution, and is thereby dissolved. (4 *Mod.* 58. 12 *Mod.* 19. 4 *Com. Dig.* 272, *Franchises*, (*G.* 3.) In *Slee* v. *Bloom*, considerable stress is laid on the fact, that it was not pretended the corporation hoped or expected to resume its functions. In this case, the operations of the bank were discontinued for a time, and again commenced, before the filing of the information. Insolvency is admitted on the 2d of *May*, 1818 ; but it no where appears how long it continued. It does not necessarily follow that the insolvency continued six years, or even one year. Much would depend on the ability of the debtors to the bank. They might, on a particular day, be unable to take up their paper, or even be wholly insolvent ; and yet, within six months or a year, thereafter, retrieve their circumstances, and meet their engagements at the bank. Such an occurrence might restore the bank to solvency. I cannot, therefore, assent to the proposition, that insolvency merely, at a particular time, however produced, is good cause for dissolving the corporation. Its continuance must be such as to afford substantial ground to consider the object for which the institution was created, as defeated.

Waiving, however, the question, how long the insolvency must have continued to work a dissolution, the answer here is, that its continuance is not alleged. The refusal to pay, unless arising from continued insolvency, is, in my apprehension, no ground of forfeiture. The remedy of the creditors would seem to be by action. As to suspending operations, that may, in some cases, be a prudent and justifiable measure ; and consistent with the ultimate solvency of the bank. There must be a total nonuser, to be a ground of forfeiture. For aught that appears,

this corporation may have continued to sue for debts, and elect their officers.

Whether an information is the proper remedy, it is unnecessary to inquire; the court being of opinion that no cause of forfeiture appears on these pleadings, and consequently that the defendants are entitled to judgment on the demurrer, for that cause.

Judgment for the defendants.