# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1870, AT WORCESTER.

━━━

**PRESENT:**

Hon. REUBEN A. CHAPMAN, CHIEF JUSTICE.
Hon. HORACE GRAY, JR.,
Hon. JOHN WELLS,
Hon. JAMES D. COLT, } JUSTICES.
Hon. MARCUS MORTON,

---

## COMMONWEALTH *vs.* GEORGE R. WETHERBEE.

A contract by which one party, for a consideration, promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest, is a contract of insurance, whatever may be the terms of payment of the consideration by the assured, or the mode of estimating or securing payment of the sum to be paid by the insurer in event of loss; and although the object of the insurer in making the contract is benevolent and not speculative.

The Connecticut Mutual Benefit Company, chartered by the Connecticut St. of 1869, *c.* 97, is an insurance company, within the St. of this Commonwealth of 1867, *c.* 267, § 5.

INDICTMENT on the St. of 1867, *c.* 267, § 5,* for acting in the transaction of the business of insurance as agent of an insurance

---

* "No officer, agent or sub-agent of any insurance company, not incorporated in this Commonwealth, shall act or aid in any manner in transacting the

Commonwealth *v.* Wetherbee.

company not incorporated in this Commonwealth, without first procuring from the insurance commissioner a certificate of authority so to do.

Trial in the superior court, before *Dewey,* J., to whose rulings the defendant alleged exceptions. The constitution, by-laws, charter, prospectus and certificate of membership of the alleged insurance company, and also the application of Frederick M. Hopkins, hereafter referred to, were made parts of the bill of exceptions ; and the material portions of them are printed in the margin.\* The rest of the bill of exceptions was as follows :

business of insurance of or with such company, or placing risks or effecting insurance therein, without first procuring from the insurance commissioner a certificate of authority so to do, for each company for which he proposes to act, which shall state in substance that such company is duly authorized to do business in this state under the laws thereof, and that such agent or other person has duly complied with the laws relating to the agents of such companies. The commissioner, upon being satisfied of the facts to be stated therein, shall grant such certificate ; " and " whoever violates the provisions of this section shall be punished by a fine not exceeding five hundred dollars for each offence." 

### \* CONSTITUTION.

" ART. 1. *Name.* This company shall be known as the CONNECTICUT MUTUAL BENEFIT COMPANY.

" ART. 2. *Object.* The important object of this company shall be, mutual benefit and relief in case of death, as hereinafter set forth.

" ART. 3. *Members.* This company shall be composed of members, male or female, of steady habits, pursuing some useful occupation, and free from bodily disease or infirmities which might render them liable to early death; and shall be arranged in divisions; and each division shall be separate from the others.

" ART. 4. *Government.* The affairs of the company shall be governed by a board of directors, of not less than three nor more than five persons. *Officers.* The officers of the company shall consist of a president, secretary and treasurer, and such other officers as the board of directors may deem necessary. *Board of Directors.* The board of directors shall have power to make all contracts, which, in their judgment, will subserve the interests of the company, and the signature of the president and secretary to any contract or obligation, when authorized by a majority of the board of directors, shall be valid and binding on the company. A majority of the board of directors shall be a quorum to do business, and have power to appoint and remove from office all officers, agents

Commonwealth *v.* Wetherbee.

" The defendant admitted, at the trial, that the Commonwealth could prove that he had solicited persons in Massachusetts to be-

and employees of the company, to prescribe their duties and fix their compensation, and require bonds when in their judgment it is necessary; they shall have power to call special meetings of the company, and have general direction and management of the affairs of the company, and may be chosen at each annual meeting by a two thirds majority vote of all the members of the company, and shall remain in office until their successors are chosen, and in case of death or resignation of either of the directors, the others in office shall choose the successor and fill the vacancy.

" ART. 5. *President.* The president shall preside at all meetings of the company, shall have power to call special meetings, and shall have the right of a vote at all meetings of the company. In case of death, resignation or absence of the president, the vice-president or one of the board of directors shall take the chair and perform all the duties thereof. *Secretary.* The secretary shall keep a true and regular account of all transactions of the company, take charge of all the company books, keep a record of the members, names and residences, and keep a complete record of all the official acts of the board of directors, and discharge such other duties as pertain to his office. *Treasurer.* The treasurer shall keep safely all moneys belonging to the company, and disburse the same under the direction of the board of directors. At each annual meeting, and as often as may be required by the directors, he shall present a full statement of his accounts, with proper vouchers; he shall make no payments except on an order drawn by the president and countersigned by the secretary, and shall discharge such other duties as pertain to his office.

" ART. 6. *Funds.* The funds of the company shall be raised by fees of admission of members and assessments, as hereinafter prescribed. *Admission Fees.* The fee for admission into the company shall not exceed ten dollars, and no assessment shall be made except on the death of a member, and such assessment shall not exceed one dollar and ten cents. *Assessments.* On the death of a member, the company shall assess each surviving member belonging to the same division one dollar, and pay the entire amount thus collected to the family, or heirs, or legal representatives of the deceased member, within sixty days after satisfactory proofs of death have been received, and at the same time the company shall assess each member ten cents in addition to the dollar, to defray the expenses of collecting and disbursing the same. *Amendments.* The constitution and by-laws shall not be altered or amended without a majority vote of two thirds of all the members of the company, at a meeting especially called for that purpose.

## BY-LAWS.

" SEC. 1. *Admission of Members.* Any person desirous of becoming a member of this company may do so by paying into the treasury the sum fixed by

come members of the Connecticut Mutual Benefit Company without having obtained authority from the commissioner so to

the board of directors, not exceeding ten dollars, stating age, occupation, and place of residence, and answering satisfactorily such questions as may be required, before a certificate of membership will be issued, which shall be of such form and device as the directors may prescribe; each certificate shall be signed by the president and secretary, and express on its face the series, division, date of issue, and the person to whom it is issued. In case the applicant is rejected, the money shall be immediately refunded.

" Sec. 2. *Special Married Divisions.* A certificate of membership may include both husband and wife jointly, in special divisions designated for the purpose.

" Sec. 3. *Forfeitures.* A member failing to pay the assessment of one dollar and ten cents, within forty days from date of notice of the death of a member of the same division, shall cease, from and after the expiration of that time, to be a member, and forfeit all claims of membership upon the company, and also all the money previously paid, and a new member may be furnished to fill the place of the retiring one; provided, nevertheless, that if a delinquent member shall subsequently apply, they may be reinstated at the discretion of the board of directors, by paying double the amount due on back assessments, or by paying back assessments when it is shown to the satisfaction of the board of directors the neglect was unintentional.

" Sec. 4. *Notification.* In case of death of any member in any certain division, the secretary shall immediately notify each member in the particular division to which the deceased member belonged, and levy the assessment of one dollar and ten cents. A written or printed notice from the secretary, directed to the address of a member, and deposited in the post-office, shall be deemed a legal notice.

" Sec. 5. *Divisions.* The arrangement of divisions shall be under the management of the board of directors.

" Sec. 6. *Change of Residence.* It shall be the duty of any member removing from his place of residence, to immediately notify the secretary of the company.

" Sec. 7. *Surplus Funds.* The money received as new membership fees, after paying the expenses of the company, shall be equitably divided among the members of the various divisions, or used to cover losses caused by the delinquencies of members, or invested in national or state bonds, or bonds and mortgages on real estate of double the amount in value, at the discretion of the board of directors.

" Sec. 8. *Annual Meetings.* The annual meeting of the company shall be held at the office of the company, on the first Monday of October 1869, and in each and every year thereafter. Each member shall be entitled to one vote at all meetings of the company."

do, and among others, Frederick M. Hopkins, in Worcester, a copy of whose application in the defendant's handwriting was

## CHARTER.

The charter (St. of Conn. of 1869, *c.* 97) passed June 25, 1869, was substantia'ly as follows:

By § 1, six persons named, "and all such persons as are members of the Connecticut Mutual Benefit Company, now located and doing business in the city of New Haven, and having for their object mutual protection and benefit in case of death, and such other persons as may be hereafter associated with them," were "constituted and made a body politic and corporate under their present constitution and by-laws, with power to make and establish such other by-laws, rules and regulations as they shall deem expedient for the better management of the concerns of said corporation, and the same to alter and repeal at pleasure; provided always, that such by-laws, rules and regulations be not inconsistent with the laws of this state or of the United States."

Section 2 authorized the company to acquire, hold and alienate real and personal property to an amount not exceeding $300,000, sue and be sued in all courts whatsoever, " do and execute all acts and things to them appertaining in their said corporate capacity," and issue certificates of membership, " which certificate shall state on its face the agreement with the member receiving the same, and when signed by the president and countersigned by the secretary shall be binding on the company, and the company shall forward within sixty days after satisfactory proof of death the amount as stated in said certificate; " and provided that "a post-office money order, for the amount of any assessment, lawfully registered in any post-office and forwarded to the company forty days from the date of the notice of the same, shall be recognized as payment of said assessment."

Section 3 provided that "for the well ordering and governing of the affairs of said company there shall be chosen annually, at such time and in such manner as the by-laws of the company shall prescribe, not less than three nor more than nine directors," who should hold office till the appointment of their successors, but no failure to appoint directors should dissolve the company.

Section 4 provided for the appointment of a president, vice-president and secretary of the company by the directors, and that the directors "may appoint such other officers, clerks and agents, and establish such agencies, and fix such compensation, as they may deem advisable; and they shall have power to make such covenants and agreements, perform such acts and exercise such powers as they shall deem expedient, subject to the authority, provisions and limitations of the charter, constitution and by-laws of said corporation," and " to declare dividends out of the surplus earnings of the company whenever they may deem it advisable."

Section 5 empowered the directors to receive subscriptions to a guaranty fund for the corporation to an amount not exceeding $200,000, transferable on

admitted by the defendant, who contended that the company was chartered as a benevolent association by a special act of the legis

the books of the company, " and whenever such fund shall be liable for the payment of losses, according to the rules of the company, the amount shall be assessed *pro rata* to the amount of the fund on each of the subscribers to said fund."

Section 6 provided for the retirement of the guaranty fund, by return of the subscriptions, when the receipts of the company should exceed the expenses to an amount equal to the amount of the fund.

Section 7 provided that the subscribers to the guaranty fund should be entitled to receive from the funds of the company three and a half per cent. semi-annually on the amount of their payments to the fund,. for the use and liability thereof.

Section 8 provided that each member of the company, and each subscriber to the guaranty fund, should be entitled to vote and take part in the meetings of the company, and be eligible to the office of director.

### . PROSPECTUS.

" This company first organized under a general law of the state and commenced business in October 1868. But a special charter was obtained of the legislature of Connecticut in May 1869, and the company have under its authority raised a guaranty fund of $100,000 as security for all its members."

" The organization of this company opened a branch of business which had, it is true, been successfully tested in other countries for more than thirty years, yet it was new and untried here."

" Its special aim is to furnish all the security, protection and relief which men seek in life insurance companies, but in a less expensive and more convenient manner. At the expiration of sixty days from the time due notice and proof of the death of any member is received at their office, the company will pay to the family or heirs of the deceased as many dollars as there are members in the division to which he or she belonged. The divisions are limited, some to 2500, others to 5000 members."

" Any person fifteen and not over sixty years of age, of sound body and mind, may become a member of this company. Persons becoming members are placed in divisions which are determined by their age, the kind of membership, or the amount of benefit desired. The single divisions consist of persons who join the company singly. The joint division consists of married men and their wives who become members jointly. The cost of membership in a single division is an admission fee of $8, an annual due of $2, commencing with the second year, and the payment of $1.10 for each death of a member of the same division. The cost of membership in a joint division is an admission fee of $15, an annual due of $3, commencing with the second year, and the payment of $1.10 for each death of a member of the same division. In the

lature of Connecticut in May 1869; that it had complied in every respect with all the terms and conditions set forth in the

joint division the $3 annual due and the assessment of $1.10 pay for both man and wife.

"The assessment of $1.10 must be forwarded to the company within forty days from the time due notice of a death is sent by the secretary. If any member neglects to send the amount within forty days after such notification, or shall neglect to pay his annual due at the proper time, he forfeits his membership and all money previously paid the company. But if a delinquent member shall subsequently apply, he may be restored to membership, if in good health, by paying double the amount of back dues and assessments, or, if it be shown to the satisfaction of the board of directors that the neglect was unintentional, he may be restored by paying the amount of back dues and assessments only."

"A member of one division cannot be assessed for the death of a member in another division, nor are members under any circumstances subject to any other expense than as previously stated. The utmost freedom consistent with justice to all is allowed in regard to travelling, residence and occupation. But any member changing his or her address must immediately notify the secretary. Blank applications for membership can be obtained from the office of the company or any of its agents. The questions should be carefully read and the answers full and explicit, as the application forms the basis of agreement with the company. A husband can sign for his wife or children.

"This company is strictly mutual, and is entirely under the control of the members." "The money received from new membership fees and annual dues, after paying expenses, belongs wholly to the members, and must be equitably divided so as to reduce the amount of assessments, or held and invested for their benefit only. All notices of death will be made through the columns of the Mutual Benefit Review, a paper published from this office as the official organ of the company, and will constitute a legal notice."

"As soon as one division is filled, a corresponding division of the next series will be commenced.

"When a death occurs in any division, the first applicant of suitable age accepted by the company is placed in that division, thereby keeping a division, when once full, always full."

### APPLICATION.

The application signed by Hodges was dated at Worcester March 26, 1870, and entitled "Connecticut Mutual Benefit Company, of New Haven. Application for Membership in Single Division." It contained his answers to the the following questions · "Name of applicant? Post-office address? Age at nearest birthday? Married or single? Occupation? Does the applicant hold a certificate in this company? Has the applicant ever been de-

Commonwealth *v.* Wetherbee.

charter ; that it was not an insurance company under the statutes of Massachusetts, but an organization for the mutual benefit of

clined by any company ? Has any physician ever given any unfavorable opinion of the applicant's life ? Has the applicant ever had, or been medically treated for any of the following diseases, viz : consumption, rheumatism, liver complaint, palpitation, apoplexy, rupture, dropsy, insanity, paralysis, fits, scrofula, disease of the heart or any other vital part ? Has the applicant any serious illness or local disease, and if so, of what nature ? Are you, to the best of your knowledge and belief, free from any disorder, infirmity or weakness, tending to impair your constitution and shorten your life ? Has your family ever been subject to any hereditary disease ? If either, or both parents are not living, state the disease of which they died, and their ages at time of death. Give name and residence of family physician. Give name and residence in full of person to whom you desire the money paid in case of death." Subjoined to the answers was this stipulation : " And it is expressly stipulated and agreed, that the above application and this declaration shall form the basis of the contract between the above named applicant and the Connecticut Mutual Benefit Company, and that if any misrepresentations or fraudulent or untrue answers have been made, or if any facts which should have been stated to the company have been suppressed therein, or any omission or neglect to pay any of the dues on or before the days on which they shall fall due shall take place, that then, in either event, this contract shall become null and void, and all moneys which shall have been paid, and also all dividends which may have accrued to the applicant, shall be forfeited to the said company for its sole use and benefit." Then followed the signature of the applicant ; and the whole was indorsed with this certificate, signed by the defendant : "I hereby affirm that all the above questions were brought to the knowledge of the above applicant, and believe the answers to the same are strictly true, and also believe his life to be safely assurable, and recommend that a certificate be issued."

CERTIFICATE OF MEMBERSHIP.

**$5000.** **$5000.**

CONNECTICUT MUTUAL BENEFIT COMPANY, OF NEW HAVEN.

*Division* . *Series* .

LIMIT 5000 MEMBERS.

This *Certificate of Membership witnesseth, That the Connecticut Mutual Benefit Company, of the City of New Haven, in the State of Connecticut, in consideration of the representations made to them in the application for this Certificate, and of the sum of* dollars, to them duly paid by ,
*and of the annual payment of* dollars, to be paid on or before the day of , *in every year during the continuance of this Certificate,*
have constituted of County of State of , Member

Commonwealth *v.* Wetherbee.

its members, and having no speculative plans but only benevo-
lent objects in view ; and that it did its business in accordance

---

of the said Connecticut Mutual Benefit Company, subject to its Constitution
and By laws.

At the end of sixty days after satisfactory proof of the death of
has been received, the said Connecticut Mutual Benefit Company hereby
promise and agree to pay as many dollars as there are then members in Di-
vision        of Series        , to        or        legal representatives, at their
office in the City of New Haven, Connecticut.

This Certificate is issued, and accepted by the above named member **or**
members, upon the following express Conditions and Agreements :

1. The above named member or members hereby agree to forward **to the**
Company one dollar and ten cents, within forty days after due notification of
the death of any member of the Division to which        belong. And the said
member or members further agree that, if the said one dollar and ten cents is
not received by the Company within forty days from the date of such notice,
then this Certificate shall be null and void, and of no effect, and all such de-
linquents shall cease to be members of the Company at the expiration of said
forty days.

2. A printed or written notice from the Secretary, directed to the address
of each and every member, as it appears on the books of the Company, and
deposited in the post-office, shall be deemed a legal notice.

3. Due notice shall be given to the Secretary of the Company by each and
every member, of all changes of his or her residence, occupation or name.

4. If the person or persons above mentioned shall be personally engaged in
submarine operations, or the production of highly inflammable or explosive
substances, or enter any military or naval service whatever, (excepting the
militia when not in actual service,) or shall die in consequence of a duel, or of
the violation of the laws, civil or military, of any nation, state or province, or
shall become so far intemperate as to seriously or permanently impair his or
her health, or induce delirium tremens, or in case the answers and declarations
made in the application for this Certificate shall be found in any respect un-
true, then this Certificate shall be null and void, and in every such case the
Company shall not be liable.

5. In every case where this Certificate shall cease or become null and void
all previous payments made thereon, and all dividends and credits accruing
thereto, shall be forfeited to the Company.

6. All members are at liberty to travel by sea, lake or river, by first class
steamers or sailing vessels, and to reside in any part of the United States,
British Provinces or Europe.

7. The above is so far modified as to allow thirty days grace for payment of
the annual due.

with said charter, and on the plan fully set forth in its constitu-
tion, by-laws, prospectus and certificate of membership, to all of
which reference was made for particulars in regard to the princi-
ples and the mode of said company's business.

"On these facts the defendant asked for a ruling that the com-
pany was not an insurance company under the laws of Massachu-
setts, and that he had a right to solicit any person or persons to
join said association, without having obtained any authority from
said commissioner, or complying with any of the laws of Massa-
chusetts relating to life or fire insurance. But the judge ruled
that the association was an insurance company under the statutes
of Massachusetts; the jury returned a verdict of guilty; and the
defendant alleged exceptions."

*G. F. Hoar & B. W. Potter,* for the defendant. This case
presents the question whether a well known class of benevolent
associations, of which the Connecticut Mutual Benefit Company
is an example, may lawfully receive members in this Common-
wealth. All these associations are based upon the principle that
the contributions, made by the members for the benefit of the rep-
resentatives of deceased associates, are wholly voluntary.

Sections 1 and 4 of the charter of the Connecticut Mutual
Benefit Company incorporate it under its present constitution
and by-laws, and subject the officers and contracts of the com-
pany thereto. Section 2 provides that the company may issue
certificates of membership, "which certificate shall state on its
face the agreement with the member receiving the same." The
certificates issued set forth the agreement as follows: "At the
end of sixty days after satisfactory proof of the death of
          has been received, the said Connecticut Mutual Benefit
Company hereby promise and agree to pay as many dollars as
there are then members in Division          of Series          to
          or his legal representatives at their office in New Haven."

In witness whereof, the said Connecticut Mutual Benefit Company has
caused this Certificate to be signed by their President, and attested by their
Secretary, in the City of New Haven, State of Connecticut, this          day
of          A. D. 18   ,

    , *Secretary.*                                        , *President.*

Section 3 of the by-laws provides that any member failing to pay the assessment of one dollar and ten cents within forty days from date of notice of the death of a member shall cease to be a member. The application signed by the member stipulates that "this application and this declaration shall form the basis of the contract between the applicant and the company" and that in case of omission to make any of the payments "this contract shall become null and void." And these provisions constitute the entire contract so far as is material to the question now raised. The by-laws, it is true, somewhat inexactly speak of these sums so to be paid as dues, and authorize the directors in their discretion to appropriate the admission fees to "cover losses caused by the delinquencies of members." But the corporation is nothing more than the custodian of a trust, collecting and distributing voluntary offerings. Such an institution is not within the laws of this Commonwealth touching foreign insurance companies.

It is conceded that the defendant and the Connecticut Mutual Benefit Company have failed to comply with those laws. The whole system of regulations prescribed for mutual insurance companies, domestic or foreign, is inapplicable to an organization of this kind. The Gen. Sts. *c.* 58, §§ 60, 67, require such companies to possess a guaranty capital of at least $100,000. Schedule D in *c.* 58 prescribes minute returns. The St. of 1861, *c.* 186, provides that the policy shall not become void by nonpayment of the premium, except as to the right to have it continue beyond a limited time calculated in the manner prescribed. The St. of 1863, *c.* 148, prohibits the issuing of policies unless the funds equal its liabilities. See also Sts. 1862, *c.* 224; 1864, *c.* 197; 1867, *c.* 267; 1868, *c.* 317.

The phrases, "insurance companies doing business on the mutual plan," in Gen. Sts. *c.* 58, and "mutual insurance companies," are technical terms well known in business. They denote associations paying at the death of the party insured a sum of money in eturn for a premium based on a risk calculated or capable of calculation. "A policy of insurance is a contract between A. and B., that upon A.'s paying a premium equivalent to the hazard run, B. will indemnify, or insure him against a particular event."

2 Bl. Com. 458. *Assecuratio est conventio seu contractus quo quis in se suscipit incertum periculum cui alter est obnoxius, qui a contrario eo nomine illi præmium retribuere tenetur.* Grotius, Introduction to Jurisprudence of Holland, cited by Lawrence, J., in *Lucena* v. *Craufurd*, 2 New Rep. 269, 300. See argument of Serjeant Coleridge, in *Paterson* v. *Powell*, 9 Bing. 320, 322–326. In the contract of the case at bar, there is neither risk nor premium. This association is a mere club. Its members subscribe an equal sum without regard to the risk. There is no premium or reward graduated to the hazard, and no sum stipulated to be paid. 1 Angell on Ins. § 287.

*C. Allen,* Attorney General, for the Commonwealth.

GRAY, J. A contract of insurance is an agreement, by which one party, for a consideration, (which is usually paid in money, either in one sum, or at different times during the continuance of the risk,) promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest. In fire insurance and marine insurance, the thing insured is property ; in life or accident insurance, it is the life or health of a person. In either case, neither the times and amounts of payments by the assured, nor the modes of estimating or securing the payment of the sum to be paid by the insurer, affect the question whether the agreement between them is a contract of insurance. All that is requisite to constitute such a contract is the payment of the consideration by the one, and the promise of the other to pay the amount of the insurance upon the happening of injury to the subject by a contingency contemplated in the contract.

The contract made between the Connecticut Mutual Benefit Company and each of its members, by the certificates of membership issued according to its charter, does not differ in any essential particular of form or substance from an ordinary policy of mutual life insurance. The subject insured is the life of the member. The risk insured is death from any cause not excepted in the terms of the contract. The assured pays a sum fixed by the directors and not exceeding ten dollars, at the inception of the contract, and assessments of two dollars each annually, and

of one dollar each upon the death of any member of the division to which he belongs, during the continuance of the risk. In case of the death of the assured by a peril insured against, the company absolutely promises to pay to his representatives, in sixty days after receiving satisfactory notice and proof of his death, " as many dollars as there are members in " the same division, the number of which is limited to five thousand. The payment of this sum is subject to no contingency but the insolvency of the corporation. The means of paying it are derived from the assessments collected upon his death from other members ; from the money received upon issuing other certificates of membership, which the by-laws declare may, after payment of expenses, be " used to cover losses caused by the delinquencies of members ; " and from the guaranty fund of one hundred thousand dollars, established by the corporation under its charter.

This is not the less a contract of mutual insurance upon the life of the assured, because the amount to be paid by the corporation is not a gross sum, but a sum graduated by the number of members holding similar contracts ; nor because a portion of the premiums is to be paid upon the uncertain periods of the deaths of such members ; nor because, in case of nonpayment of assessments by any member, the contract provides no means of enforcing payment thereof, but merely declares the contract to be at an end, and all moneys previously paid by the assured, and all dividends and credits accrued to him, to be forfeited to the company.

The fact, offered to be proved by the defendant, that the object of the organization was benevolent and not speculative, has no bearing upon the nature and effect of the business conducted and the contracts made by the corporation.

The ruling that this association was an insurance company, within the meaning of the statute upon which the defendant was indicted, was therefore correct, and his

*Exceptions must be overruled.*