THE GOLDEN RULE

*v.*

THE PEOPLE *ex rel.* Charles P. Swigert.

*Filed at Ottawa November 13, 1886.*

1. LIFE INSURANCE—*corporation organized under the act of 1872—for what purposes allowable—and herein, what constitutes an insurance company.* Under the act of 1872 a corporation may be organized for any lawful purpose, except (among others mentioned) for that of insurance. If a corporation formed under that act attempts to transact the business of life insurance, though confined to members of the body, it may be proceeded against, by *quo warranto,* for usurping powers not conferred by law.

2. A corporation formed under such act, intended to benefit the widows, orphans, heirs and devisees of deceased members, and members who have received a permanent disability, in which the members are to receive no money, as profit or otherwise, except for permanent disability, is not to be regarded as an insurance company, and is therefore lawful.

3. When, however, although the declared object of a corporation organized under said act is the benefit of its members, yet the pecuniary benefits are not to be enjoyed exclusively by the widows, orphans, heirs and devisees of deceased members, and by members permanently disabled, but may be given to others named by the deceased member, it will be illegal, as contemplating a business not authorized by the laws of the State.

4. And when such a corporation attempts to transact a business in the nature of a life insurance, it matters not that the fund out of which beneficiaries are to be paid, is raised solely by voluntary contributions. The expectation that the fund will be raised, is an inducement for becoming members, and, when raised, there will be a legal obligation to pay it to the persons named as beneficiaries.

5. So where a corporation establishes a relief fund, to be raised and kept up by voluntary contributions of its members, from which it agrees, upon

the death of a member, to pay a sum, not exceeding a certain amount, to a beneficiary named by such deceased member, and a sum, not to exceed another certain amount, to the members holding certificates next in number above and below that of the deceased, and upon the death of a member notice is given to all other members, who are expected to contribute to the relief fund, such corporation will be liable to the charge of engaging in the business of life insurance.

6. Same — *wager policy — what so considered, and of its illegality.* Where a corporation, upon the death of a member, raises a relief fund, by voluntary contributions or donations, of its other members, not exceeding $2000, seventy-five per cent of which is to be paid to a beneficiary to be named by the deceased member in his lifetime, and twenty-five per cent to the two members who may, by chance, hold the certificates of membership next above and below that of the deceased, its business is not only that of life insurance, but is also illegal, as to those taking the twenty-five per cent, it being in the nature of a wager policy.

Appeal from the Circuit Court of Warren county; the Hon. John J. Glenn, Judge, presiding.

Messrs. Hooker & Edmunds, and Mr. William C. Norcross, for the appellant:

The provisions for the payment of money on the death of a member, have no elements of insurance. Neither the deceased member, nor any one for him, pays anything for being admitted to the benefits of these provisions. The beneficiary must be within the class named,—that is, must be a widow, orphan or dependent.

A party giving to benevolent or charitable purposes has the right to designate the object of his bounty. Life insurance is an undertaking to pay a sum in gross, or a certain annuity to the person for whose benefit the contract is made, upon the death of the person whose life is insured. Bonney on Insurance, 29; Park on Insurance, 429.

The certificates issued are not insurance policies. They are without valuable consideration, passing from the member receiving it, to the society. *Commonwealth* v. *Wetherbee,* 105 Mass. 149; May on Insurance, secs. 1, 340, 346; 1 Parsons on Contracts, 234; 1 Story on Contracts, sec. 427; *McLean*

v. *McBean,* 74 Ill. 134 ; *Davis* v. *Insurance Co.* 135 Mass. 251 ;. *Dunlap* v. *Allen,* 90 Ill. 108.

Mr. E. S. SMITH, for the appellees, contended that when this case was first before this court, more than a question of practice was decided, and that the merits were considered, and that the decision then made is conclusive. The pleas. show the same facts that were shown by the petition for leave to file the information, and the affidavit in support thereof,. and very little more.

It is not necessary to discuss the liability of the members. to pay, on notice of the death of a member. The material questions are, the powers assumed by the corporation, and its pretended rights.

We insist that the business done by this corporation is that. of insurance, and that it is an unlawful life insurance business. Neither the times and amounts of payment by the assured, nor the modes of .estimating or securing the payment of the sum to be paid by the insurer, affect the question whether the agreement between them is a contract of insurance. (*Commonwealth* v. *Wetherbee,* 105 Mass. 149 ; May on Insurance, sec. 1.) The corporation agrees to pay whatever it gets, and agrees to take steps to. get the money.

The members who receive the twenty-five per cent, take it. as the result of a speculation, as profit,—not to compensate for any loss. In this respect the certificates are in the nature; of wager policies. *State* v. *Life Ins. Co.* 38 Ohio St. 281.

Mr. JUSTICE SHELDON delivered the opinion of the Court :

This was a proceeding by information in the nature of a. *quo warranto,* against the Golden Rule and its directors. The information contains three counts. The first sets forth the organization of the Golden Rule as a body corporate, under the general Incorporation law, approved April 18, 1872, (Rev. Stat. 1874, p. 290,) and its mode of doing business, and avers.

that it has usurped, and now usurps, powers and franchises not conferred by law. The second avers that the corporation has wrongfully, and without warrant of law, engaged in and transacted a life insurance business, and is therein wrongfully usurping power; and the third count sets forth that it has unlawfully usurped and exercised powers and franchises in respect to its so-called relief fund, and is so doing. To the information two pleas were filed, one by the corporation, and the other by the directors. These pleas set forth all the facts concerning the organization, objects, operation and business of the corporation, its constitution and by-laws, etc., and deny that it has exercised any power or franchise not warranted by law. A demurrer was sustained to the pleas. The defendants have appealed to this court, and assign for error. the decision of the circuit court in sustaining the demurrer and entering judgment of ouster.

Among the objects of the association, as set forth in the pleas, are:

"*Second*—To aid its members in the struggles incident to life, and to assist its sick and distressed members in every way that may be suggested by a refined humanity.

"*Third*—To establish a fund by voluntary contributions, for the benefit and relief of the widows and orphans of deceased members, thereby securing the blessings of independence to those who otherwise might be left in poverty.

"*Fourth*—To give material aid to those who, through a long series of years, may have their charity drawn upon by frequent and continued contributions, thus securing in old age a realization of mutual aid and protection."

Section 1, article 4, of its constitution, is: "The Supreme Council shall establish, by voluntary contributions from the members of the order, a relief fund, from which, upon the death of a member, an amount not exceeding $1500 shall be paid to such person or persons as shall have been designated by such deceased member, and a sum not to exceed $500

shall be distributed in accordance with the custom and laws of the order; and the subordinate councils shall have authority to establish a charity fund, by voluntary contributions from the members of the order, to be devoted to the relief of worthy distressed members."

In section 2 of the by-laws it is declared: "The relief fund shall consist of contributions received from its members, upon the death of a member. The amount so raised shall be distributed as follows: Seventy-five per cent,—not to exceed $1500,—to the widow, orphan, or other dependent, as deceased member shall have directed in his or her application for an interest in said fund; and twenty-five per cent,—not to exceed $500,—equally between the two members holding valid and existing certificates, next in number, both above and below, the number of the certificate of such deceased member. If there is an excess in the amount so raised, it shall remain in the relief fund, and when said fund contains $2000, then it shall be used to pay the beneficiaries, and no contributions shall be asked. Out of the amount contributed for the relief fund, the Supreme Council may appropriate a sum,—not to exceed ten per cent,—to the expense fund of Supreme Council. The Supreme Council shall cause to be paid to the beneficiaries of deceased members, the contributions received, within sixty days after due notice of death."

The form of application for an interest in the relief fund, given in the pleas, after stating that all answers to the medical examiner are true, proceeds: "I desire my interest in said fund, being a sum not to exceed $2000, of the amount contributed at my death, to be paid as follows: Seventy-five per cent (not to exceed $1500,) to . . . . . . , and the residue (twenty-five per cent,) equally to those persons who hold valid certificates in the relief fund department, numbered next above and next below the number of my certificate. I declare this to be my last will and testament as regards my interest in the relief fund of this order."

The pleas give the form of the certificate issued, whereby the holder is declared to be entitled to an interest in the relief fund, as above set forth. The pleas state that the practice of the Supreme Council is to number the certificates according to the age of the member, instead of the order in which the applications are received, "so that the certificates of the older members would bear numbers between certificates of the younger members, and thus, by giving the younger members of the fund the prospect of receiving back some part of the contributions made by them, would encourage them to contribute thereto, and continue their membership in the order;" that all the payments which are required to be made by members, is a membership fee, for charter members, of $5; for subsequent members, $7, and a semi-annual due of fifty cents, which are devoted exclusively to expenses.

According to the showing of the pleas, we are of opinion that this corporation is in the exercise of powers not conferred by law. A corporation can only organize under this act above mentioned, "for any lawful purpose, except　*　*　* insurance." (Sec. 1 of the act.) By the last clause of section 31 of the act, it is provided that societies intended to benefit the widows, orphans, heirs and devisees of deceased members thereof, and members who have received a permanent disability, and where no annual dues or premiums are required, and where the members shall receive no money, as profit or otherwise, except for permanent disability, shall not be deemed insurance companies. Here is the strongest implication that a society doing such a business as the pleas present, is doing an insurance business, and that it is to be deemed an insurance company. Not to be deemed an insurance company under the act, it must be intended to benefit the widows, orphans, heirs and devisees of deceased members, and members who have received a permanent disability, and where the members shall receive no money, as profit or otherwise, except for permanent disability. But here the declared

object is the benefit of members, and the pecuniary benefits are enjoyed, not by the widows, etc., of deceased members, and by members who have received a permanent disability, but by the appointees of deceased members, the beneficiary named in the application, and by certain of the members generally, and not members who had received a permanent disability.

It is urged that there are no assessments made on members to pay the benefits,—that the relief fund is constituted solely by the voluntary contributions of members. When a death occurs, of a member entitled to the benefits of the relief fund, the secretary is required to give notice of the fact to each member of the order of the Golden Rule, who is asked to make contribution to the relief fund; but no penalty whatever attaches for not contributing, it being entirely voluntary to do so or not. Although there be no compulsory means of raising this relief fund, and it consists solely of donations made as thus stated, there is certainly expectation that the fund will be raised, and when raised, there is an absolute obligation to distribute it to the persons named. This relief fund forms an important part of the society's scheme, and is doubtless a main inducing reason for becoming a member of it, rendering it highly improbable that it will not be provided in the mode pointed out. When the contributions are received, seventy-five per cent of the amount (not exceeding $1500,) is required to be paid to the beneficiary named in the certificate of the member, and twenty-five per cent (not exceeding $500,) is to be divided equally between the two members holding certificates numbered next above and below the number of the deceased member's certificate. Although the constitution of the society provides that this amount of seventy-five per cent shall be paid to such person or persons as shall have been designated by the deceased member, and the certificate states that it shall be paid over to the person named in such person's application, it is said the person

named must, under the laws of the order, be a widow, orphan or dependent. The foundation for this statement appears to be the provision in the by-law that the money shall be distributed to the widow, orphan or other dependent, as the deceased shall have directed in his application. Even under this provision, a dependent may be designated; and a dependent is not necessarily of the class of persons designated in the above named section 31 of the law under which the corporation was created, to-wit, widows, orphans, heirs and devisees. But, passing this feature of the payment, the requiring of twenty-five per cent of the amount to be paid to the two members who happen to hold certificates next in number to that of the deceased member, marks the transaction as unlawful life insurance business, as to be deemed such, under said section 31 of the statute. These two members are not members who, as named by this section, have received a permanent disability, nor are they members who "receive no money, as profit or otherwise, except for permanent disability." They become entitled to the money simply by chance—from holding certificates which happen to bear certain designated numbers. The affair is in the nature of a wager policy.

This case was before this court on a former occasion, (*The People ex rel.* v. *Golden Rule,* 114 Ill. 34,) and although there was then involved but a question of practice, we took occasion there to say this much with regard to the merits of the case: "Although the payment of dues to a corporation, on account of fees or assessments upon its members, may be purely voluntary, persons may acquire legal rights to share in them when they are paid. * * * At present we do not perceive why the payment of a premium to one who holds a number next to that held by one who dies, and solely because he does die, is not, in effect, in the nature of a wager upon the life of one in whom the party thus benefited has no interest, and why, therefore, the transaction is not within the

condemnation of the principle announced in *Guardian Mutual Life Ins. Co.* v. *Hogan*, 80 Ill. 35. And see, also, to like effect, *Commonwealth* v. *Wetherbee*, 105 Mass. 149; *State* v. *Standard Life Ins. Co.* 38 Ohio St. 281." After more full consideration, our views now coincide with what we then thus said. The circumstance of the relief fund not being made up from fees and assessments, but of purely voluntary contributions, does not, in our opinion, make any difference.

The judgment will be affirmed.

*Judgment affirmed.*