[No. 11089.    In Bank.—May 10, 1890.]

THE PEOPLE EX REL. ATTORNEY-GENERAL, APPELLANT, v. THE DASHAWAY ASSOCIATION, RESPONDENT.

CORPORATIONS — FORFEITURE OF FRANCHISE — QUO WARRANTO. — Corporations are creatures of the law, and when they fail to perform duties which they were incorporated to perform, and in which the public have an interest, or do acts which are not authorized or are forbidden them to do, the state may forfeit their franchises, and dissolve them by an information in the nature of a *quo warranto.*

ID. — WILLFUL ACTS AND NEGLECTS OF OFFICERS — APPROVAL OF CORPORATION. — Upon a public inquiry into the acts or neglects of a corporation, with a view to the forfeiture of its charter, the willful acts and neglects of its officers are regarded as the acts and neglects of the corporation, and will render the corporation liable to a judgment or decree of dissolution, unless it is made to appear that the agent has departed from his duties as prescribed by the corporation, or violated his instructions in the performance of the acts complained of and relied upon as a basis of forfeiture.

ID. — GRANT OF FRANCHISES — IMPLIED CONDITION — PRINCIPLE OF FORFEITURE — PERVERSION — USURPATION — PUBLIC INTEREST. — The grant of corporate franchises is always subject to the implied condition that they will not be abused. The principle of forfeiture is, that the franchise is a trust, and the terms of the charter are the conditions of the trust, and if any one of the conditions be violated, it will work a forfeiture of the charter. But to work a forfeiture, the case must either be one of perversion by an act inconsistent with the nature of the grant and destructive of its ends, and which amounts to an injury to the public, who are interested in the franchise, or it must be one of usurpation by the exercise of an unauthorized power, regardless of any interest or injury to the public.

ID. — CORPORATION ORGANIZED TO PROMOTE "TEMPERANCE" — PERVERSION OF FUNDS — INJURY TO PUBLIC — CHARITABLE USE — UNCERTAINTY OF TERMS — CONSTRUCTION. — An information in the nature of a *quo warranto* will not lie to enforce a dissolution of a corporation, organized merely "to promote the cause of temperance," on the ground that it has

disregarded its corporate trust and violated its charter by perversion and misapplication of its funds from the object for which it was formed, and from the use for which the funds were given and received, by dividing the same among its members, for the reason that the perversion of the funds is not an injury to the public. Though the enforcement of charitable uses cannot be limited to any narrow and stated formula, yet the word "temperance" has no fixed legal meaning as distinguished from its usual import, and is too vague and uncertain in its general signification to establish a public charity which can be administered by a court of equity, when not clearly limited to the sense of restraining the abuse of intoxicating liquors. The court cannot affix a limitation or definite meaning to a term which, standing by itself, or in the context in which it is used, has only a general or unlimited signification.

ID. — PROCEDURE IN QUO WARRANTO — CONSTITUTIONAL LAW — REPEAL OF CODE PROVISIONS. — Whether the constitution of 1879, restoring the writ of *quo warranto*, which was abolished by section 802 of the Code of Civil Procedure of 1872, has or has not had the effect to repeal sections 803 to 809 of the Code of Civil Procedure, which provide for an action by the Attorney-General in the name of the people against the usurper or unlawful holder of an office or franchise, can make but little difference, as the power under a writ of *quo warranto* is quite as broad as under the statute, and an information or complaint sufficient under those sections of the code will be sustained as in support of a writ of *quo warranto*, if the proper parties are before the court.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Attorney-General Johnson, S. Heydenfeldt, Jr., Walter H. Levy,* and *J. P. Kelly,* for Appellant.

*McClure & Dwinelle,* and *Tilden & Tilden,* for Respondent.

The COURT.—This is an information in the nature of a *quo warranto* to forfeit the charter of the Dashaway Association, a corporation organized and existing under the laws of the state of California, and for a judgment declaring that its property escheat to the state; that a receiver be appointed to take possession of all the property; that an injunction issue, etc.

The complaint avers that the object and purpose for which the said corporation was formed was to promote

the cause of temperance; that it has no capital stock; that it has members who are elected under provisions of its by-laws; that it has since its incorporation received at various times from its members and others contributions and donations of money for the purpose for which it was incorporated, to wit, the promotion of the cause of temperance, with which moneys it acquired by purchase real estate in the city and county of San Francisco; that in 1883, by leave of the court, it sold certain real estate in said city and county for one hundred and fifty-six thousand dollars; that it paid off a mortgage of forty-five thousand dollars, leaving a balance in cash on hand of one hundred and eleven thousand dollars, realized from property purchased with donations as aforesaid and for the purposes aforesaid; that the corporation has abused and misused its powers, disregarded its corporate trust, and violated its charter, and has fraudulently and unlawfully perverted its funds, and misapplied seventy-two thousand dollars from the object for which the corporation was formed, and from the use for which it was given and received, by dividing, distributing, and paying out the same among its members; that the officers and members have conspired and colluded with defendant to fraudulently and unlawfully accomplish this result, and that the corporation has still the sum of thirty-nine thousand dollars on hand, received in like manner and for like purpose, which, as relator is informed, it will dispose of in like unlawful manner, unless restrained.

Defendant demurred to the information, upon the grounds,—"1. That the said complaint does not state facts sufficient to constitute a cause of action; 2. That the said court has no jurisdiction of the person of the defendant or the subject of the action."

The demurrer was sustained by the court below, "on the grounds that the court has no jurisdiction."

Judgment was entered in favor of defendant, from which judgment relator appeals to this court.

Corporations are creatures of the law, and when they fail to perform duties which they were incorporated to perform, and in which the public have an interest, or do acts which are not authorized or are forbidden them to do, the state may forfeit their franchises and dissolve them by an information in the nature of a *quo warranto.* (*People* v. *Utica Ins. Co.,* 15 Johns. 358; 8 Am. Dec. 243; *People* v. *Pittsburg R. R. Co.,* 53 Cal. 694; *Golden Rule* v. *People,* 118 Ill. 492.)

The grant of corporate franchises is always subject to the implied condition that they will not be abused. (*Chicago Life Ins. Co.* v. *Needles,* 113 U. S. 574.)

"In its relations to the government, and when the acts or neglects of a corporation, in violation of its charter or of the general law, become the subject of public inquiry, with a view to the forfeiture of its charter, the willful acts and neglects of its officers are regarded as the acts and neglects of the corporation, and render the corporation liable to a judgment or decree of dissolution." (Angell and Ames on Corporations, sec. 310; *Life Ins. Co.* v. *Mechanics' Ins. Co.,* 7 Wend. 35; *Bank Commissioners* v. *Bank of Buffalo,* 6 Paige, 497; *Ward* v. *Sea Ins. Co.,* 7 Paige, 294.)

This reasoning proceeds upon the theory that the corporation is cognizant of and approves of the acts of its agents; and where it is made to appear that the agent has departed from his duties as prescribed by the corporation, or violated his instructions in the performance of the acts complained of and relied upon as a basis for forfeiture, no such forfeiture will be declared. (*State* v. *Commercial Bank,* 6 Smedes & M. 237.)

In *People* v. *Utica Ins. Co.,* 15 Johns. 358, 8 Am. Dec. 243, an application had been previously made by the attorney-general to a court of chancery for an injunction to restrain the company from usurping the franchise of banking, which application was refused because there was a complete and adequate remedy at law by an in-

formation in the nature of a *quo warranto*. *People* v. *Bank of Niagara*, 6 Cow. 196, *People* v. *Washington and Warren Bank*, 6 Cow. 211, and *People* v. *Bank of Hudson*, 6 Cow. 217, are authority to the point that the action is properly brought in the name of the people, and against the corporations in their corporate names, in cases where they had, as corporations, usurped franchises not granted by their charters. (See also *People* v. *Trustees of Geneva*, 5 Wend. 211.)

The writ of *scire facias* was formerly used by government as a mode to ascertain and enforce the forfeiture of a corporate charter, in cases where there was a legal existing body capable of acting, but who had abused their power. It would not lie in cases of mere *de facto* corporations. It was necessary that the government be a party to the suit, for the judgment was that the parties be ousted and the franchises seized into the hands of the government. (2 Kent's Com. 313.)

The writ of *quo warranto* was a writ which issued to bring the defendant before the court to show by what authority he claimed an office or franchise, and was applicable alike to cases where the defendant never had a right, or where, having a right or franchise, he had forfeited it by neglect or abuse. (3 Bla. Com. 262, 263.)

*An information in the nature of quo warranto*, which has succeeded the writ of that name, was originally in form a criminal proceeding to punish the usurpation of the franchise by a fine, as well as to seize the franchise. This information has, in process of time, become, in substance, a civil proceeding to try the mere right to the franchise or office.

It was a peculiarity of both the *quo warranto* and information in the nature of *quo warranto* that the ordinary rule of pleading was reversed, and the state was bound to show nothing, and the defendant was required to show his right to the franchise or office in question; and if he failed to show authority, judgment went

against him.   (Angell and Ames on Corporations, sec. 756.)

The practice has, however, become quite general in this country for the information to set forth the facts relied upon to show the intrusion, misuser, or non-user complained of.

In information of *quo warranto* there were two forms of judgment. When against an officer or individual, the judgment was *ouster;* when against a corporation by its corporate name, the judgment was *ouster* and *seizure.*

In the first case, there being no franchise forfeited, there is none to seize; in the second case there is; consequently the franchise is seized.   (2 Kent's Com. 312, and note.)

But there may be a judgment of *ouster* of a particular franchise, and not of the whole charter.   (*People* v. *S. & R. R. R. Co.,* 15 Wend. 113.)

By such *ouster* and *seizure* the franchises are not destroyed, but pass to and exist in the state.   The corporation was destroyed, and ceased to be the owner or possessor of lands, or goods, or rights, or credits.   The lands reverted to the grantor and his heirs, and the goods escheated to the state.

The principle of a forfeiture is, that the franchise is a trust; and the terms of the charter are conditions of the trust, and if any one of the conditions of the trust be violated, it will work a forfeiture of the charter.

Cases of forfeiture are said to be divided into two great classes: —

1.   *Cases of perversion;* as where a corporation does an act inconsistent with the nature and destructive of the ends and purposes of the grant.   In such cases, unless the perversion is such as to amount to an injury to the public, who are interested in the franchise, it will not work a forfeiture.

2.   *Cases of usurpation;* as where a corporation exercises a power which it has no right to exercise.   In this

last case the question of forfeiture is not dependent, as in the former, upon any interest or injury to the public.

We have referred in a general way to the modes of procedure under these several writs, and the nature of the relief granted under them, for a purpose which will become apparent when we look into the following provisions of our code:—

Section 802 of the Code of Civil Procedure of 1872 provides as follows: "The writ of *scire facias,* of *quo warranto,* and proceedings by information in the nature of *quo warranto,* are abolished. The remedies obtainable in these forms may hereafter be obtained by civil actions, under the provisions of this chapter."

Then follow the provisions of the chapter from section 803 to 809, both inclusive, providing for an action by the attorney-general in the name of the people of the state, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this state.

This was the condition of our law until 1879, when the present constitution of the state went into effect, the fifth section of article 6 of which authorizes the superior courts and their judges to issue writs of *quo warranto,* and in 1880 the Code of Civil Procedure was amended to conform in this respect to the constitution. (Code Civ. Proc., sec. 76.)

If, then, it be contended that the effect of the constitution and amendment to section 76 of the Code of Civil Procedure, reviving the writ of *quo warranto,* is to repeal by implication the chapter providing for an action against persons who usurp offices or franchises, the answer must be that it makes little difference, as the power under a writ of *quo warranto* is quite as broad as under the statute.

The mode of proceeding under the several writs we have mentioned has not in modern times been very uniform, and we regard the information or complaint

in this case sufficient in its general scope to uphold a proceeding like the present, whether brought under the statute, or in support of a writ of *quo warranto.*

We say sufficient in its general scope, in the view that it will uphold the one equally with the other.

We are clearly of opinion that the proper parties are before the court, the nature of the relief sought considered.

The vital question, however, remaining in either case is this: Has there been a perversion by the defendant of its funds under such circumstances as to amount to an injury to the public?

We have already said that in cases of perversion the acts must result in injury to the public, who are interested in the franchise, or no forfeiture will be declared. Has the public such an interest here, and has it been injured?

The information avers "that the object and purpose for which the said corporation was formed was to promote the cause of temperance"; that it has received moneys contributed and donated by its members and other persons for "the promotion of the cause of temperance."

These are the only allegations touching the objects of the association, the scope of its action, and the manner of its achievement.

Whether temperance in eating, in drinking, or temperance generally and in all things, is meant, is not stated, and must be left to conjecture.

Whether its operations and efforts are confined to members of the association, or extended to those outside of the pale of the society, does not appear.

In *Saltonstall* v. *Sanders,* 11 Allen, 446, the supreme court of Massachusetts upheld as a public charity a residuary bequest for the following purposes: "1. To the furtherance and promotion of the cause of piety and good morals; or 2. In aid of objects and purposes of

benevclence or charity, public or private; or 3. Temperance; or 4. For the education of deserving youths."

In reference to the third clause, relating to the bequest, viz., that for the furtherance and promotion of *temperance,* another portion of the will indicated so unmistakably the meaning of the testator that the court says that the term "temperance," "which is shown by the previous clause, above quoted, to have been used by the testator in its modern and limited sense of restraining the abuse of intoxicating liquors."

That a bequest for the purpose of being used by a trustee for the cause of temperance, in restraining the abuse of intoxicating liquors, is a public charity, and may be upheld as such, we do not doubt.

So, too, we are fully alive to the fact that, upon the construction of general charitable bequests, " if there are two meanings of a word, one of which will effectuate and the other will defeat the testator's object, the court is bound to select that meaning of the word which will carry out the intention and objects of the testator."

The enforcement of charitable uses cannot be limited to any narrow and stated formula. As has been well said, it must expand with the advancement of civilization and the daily increasing needs of men. New discoveries in science, new fields and opportunities for human action, the differing condition, character, and wants of communities and nations, change and enlarge the scope of charity, and where new necessities are created new charitable uses must be established. The underlying principle is the same; its application is as varying as the wants of humanity.

Public charities have often been enforced in cases lacking in that definiteness essential to uphold a bequest to individuals.

It does not follow, however, that we can by adjudication give a definite meaning to language which, standing

by itself, or in connection with its context, has only a general signification, incapable of limitation.

The word "*temperance*" has no fixed legal meaning as contradistinguished from its usual import.

Webster defines it as " habitual moderation in regard to the indulgence of the natural appetites and passions; restrained or moderate indulgence; moderation; as temperance in eating and drinking; *temperance* in the indulgence of joy or mirth."

Where a testator bequeathed the residue of her estate to the Bishop of D., to dispose of the same " to such objects of benevolence and liberality as the bishop in his own discretion shall most approve of," the bequest was held void, upon the ground that objects of benevolence and liberality were not necessarily charitable within the statute of Elizabeth, and were, therefore, too indefinite to be executed. (*Marice* v. *Bishop of Durham,* 9 Ves. 399.)

Upon the like ground a bequest " for the relief of domestic distress, assisting indigent but deserving individuals, or encouraging undertakings of general utility," has been held void for vagueness and uncertainty, and as not being within the scope of the statute of Elizabeth. (*Kendall* v. *Granger,* 5 Beav. 300.)

We are of opinion that the term used in the information here is too vague and uncertain to enable us to say therefrom that the fund in question is a public charity, which can be administered by a court of equity.

It follows that the perversion of the fund is not an injury to the public, and hence that the forfeiture cannot be maintained.

The judgment is affirmed.

Fox, J., deeming himself disqualified, did not participate in this decision.